STATE of North Dakota, Plaintiff
and Appellant,

v.

Russell METZNER, Defendant
and Appellee.

Crim. No. 931.

Supreme Court of North Dakota.

Sept. 29, 1983.

Gail H. Hagerty, State's Atty., Bismarck, for plaintiff and appellant.

James J. Coles, Bismarck, for defendant and appellee.

Bruce D. Quick, Exec. Director, North Dakota State's Attys. Ass'n, Fargo, amicus curiae.

PAULSON, Surrogate Justice.*

This is an appeal by the State from an order suppressing evidence entered in the District Court of Burleigh County. We reverse.[1]

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section 27–17–03, N.D.C.C.

1. Amicus curiae, the North Dakota State's Attorney Association, urges this court to adopt a "good faith" exception to the exclusionary rule. We first note that this issue was not argued in

On October 22, 1982, the defendant, Russell Metzner [Metzner], was arrested and charged with possession of more than one ounce of marijuana, a class C felony. Following a preliminary hearing and arraignment in district court, Metzner entered a plea of not guilty and filed a motion to suppress "all evidence obtained by the state as a result of a search conducted on or about October 21, 1982, at the residence of the defendant". A hearing on the motion was held on March 29, 1983, in the District Court of Burleigh County. On April 5, 1983, the judge issued an order suppressing evidence. It is from this order that the State now appeals.

On October 21, 1982, John P. Burkel, a special agent of the Bureau of Alcohol, Tobacco and Firearms stationed in Fargo, obtained a search warrant authorizing the search of Metzner's residence for a firearm and documents evidencing the purchase or possession of the firearm. In seeking the search warrant, as well as a warrant for Metzner's arrest for a violation of the federal firearms law involving the possession of a firearm by a felon, Burkel prepared an affidavit which was signed and sworn to before a United States magistrate. This affidavit alleged, in relevant part, as follows:

"JOHN P. BURKEL, Special Agent, Bureau of Alcohol, Tobacco and Firearms, Fargo, North Dakota, being first duly sworn, deposes and says:

"I

"Your affiant, Special Agent John P. Burkel, has been a Special Agent with the Bureau of Alcohol, Tobacco and Firearms, United States Treasury Department, for approximately 11 years, and during that time has investigated numerous violations of the Federal Firearms

the lower court, nor was it raised by the State on appeal. Because we have determined that probable cause to issue the warrant did exist, we do not deem it necessary, at this time, to consider the adoption of a "good faith" exception, as urged by the amicus curiae.

Laws and is familiar with the laws and regulations promulgated thereunder.

"II

"An arrest warrant for Russell D. Metzner and a search warrant is being sought for the residence of Russel [sic] D. Metzner, a white, with blue trim, Holly Park brand name, mobile home, located in Block number 2, lot 7, of the Acres-of-Plenty [sic] Trailer Park, rural Bismarck, North Dakota. It is believed probable cause exists that Russell D. Metzner is in possession of a Remington Model 788, 22/250 caliber rifle, Serial number A6032846, in the above residence, in violation of the Federal Firearms Laws, to-wit: Title 18, United States Code Appendix, Section 1202(a)(1).

"III

"On October 5, 1982, I was contacted by James Zimmerman, Detective, Bismarck Police Department, Bismarck, North Dakota. He related that on October 1, 1982, an individual, who identified himself as Steve L. Metzner, purchased a Remington Model 788, 22/250 caliber rifle from Arrowhead Scheels, Bismarck, North Dakota. Pursuant to this sale, the purchaser completed an ATF form 4473 on which he provided personal information identifying himself as Steve L. Metzner, date of birth of August 9, 1958, with an address of 700 South 12th Street, Bismarck, North Dakota. The purchaser answered 'No' to the question: 'Have you ever been convicted in any Court of a crime punishable by imprisonment exceeding one year?' and signed the form 'Steve Metzner'. Detective Zimmerman stated that his investigation reveals Steve Metzner to be a convicted felon. Detective Zimmerman further related that he subsequently conducted an interview with the seller of the firearm, Gary Kurtz. Mr. Kurtz observed the purchaser leave the store, with the rifle, in an older model, lime green, Audi four-door vehicle, North Dakota license AJA 111. Detective Zimmerman stated he found this

license number to be registered to: Penny Metzner, 87 Pheasant Street, Acres-A-Plenty, Bismarck, North Dakota.

"IV

"On October 14, 1982, Detective Zimmerman related to me that on October 8, 1982, Steven Joseph Metzner was interviewed by Lt. Horiup, Bismarck Police Department, concerning the aforementioned rifle purchase. Detective Zimmerman related that Steven Joseph Metzner denied purchasing the rife [sic] from Arrowhead Scheels Store on October 1, 1982. During this interview, Lt. Horiup observed that the physical description of Steven Metzner did not meet the description, provided by Gary Kurtz, the seller of the firearm, of the purchaser of the firearm on October 1, 1982.

"V

"On October 19, 1982, I checked the records of a Morton County District Court, Mandan, North Dakota, and found that Russell D. Metzner had been convicted on October 29, 1975, for the crime of burglary, a felony in the State of North Dakota. He was sentenced to four to seven years in the State Penitentiary. I subsequently obtained a photograph numbered 11957 from the North Dakota State Bureau of Criminal Identification. This was an identification, 'mug shot' photograph from the official BCI file of Russell D. Metzner, which reflected him as having been convicted of burglary in 1975.

"VI

"On October 20, 1982, I interviewed Gary Kurtz, Assistant Manager of Arrowhead Scheels, Bismarck, North Dakota. I displayed a photograph layout of six identification, 'mug shot' photographs including that of Russell D. Metzner, numbered 11957. Mr. Kurtz identified that photograph, of Russel [sic] D. Metzner, as a photograph of the individual who purchased a Remington rifle,

22/250 caliber, serial number A6032846, on October 1, 1982, and who at that time identified himself as Steve Metzner. Mr. Kurtz stated that he observed Metzner leave his store in a green Audi bearing North Dakota license number AJA 111, with a aforedescribed rifle. Mr. Kurtz further stated that his check with the Bismarck Police Department, at the time of the sale, revealed the drivers license number orally provided by the purchaser, Metzner, as proof of identification, was fictitious. He stated that Metzner left the store during the drivers license check. Mr. Kurtz stated he immediately notified the Police Department of the transaction upon learning of the fictitious drivers license number.

## "VII

"On October 20, 1982, I interviewed Barb Mosner at Acres-A-Plenty Trailer Park, rural Bismarck, North Dakota. Mrs. Mosner stated that she and her husband, Larry, are current manager [sic] of the trailer park and have been managers since October 1, 1982. She stated her records revealed that Russell Metzner lived at Block No. 2, Lot No. 7, in a mobile home which would be located on Pheasant Street, the seventh trailer on the right-hand side, on Pheasant Street, coming from Quail Street. Her record revealed Metzner has lived in that trailer longer than one year.

Later that same day, I interviewed Larry Mosner who stated he has observed Russell Metzner on several occasions since October 1, 1982, at or around the trailer, lived in by him. He identified the photograph number 11957, from a photo spread of six identification photographs, as a photograph of Russell Metzner.

## "VIII

"On October 20, 1982, I viewed the residence of Russell D. Metzner, as previously described to me by the Mosner's. [sic] I found this residence to be a white with blue trim mobile home, with the brand name, Holly Park, on the front of the trailer, and a red steel building setting adjacent to the trailer, which faces Pheasant Street in the Acres-of-Plenty [sic] Trailer Park in rural Bismarck, North Dakota. This trailer is the seventh trailer on the right-hand side of Pheasant Street as you drive east from the intersection of Pheasant and Quail Street. At this time, I observed a lime green Audi Station wagon, four-door, bearing North Dakota license number AJA 111, parked at the above-described mobile home.

## "IX

"On October 21, 1982, I was furnished information by the Clerk of the Burleigh County Court, Bismarck, North Dakota, that Russell D. Metzner and Penny Hoffman were married on February 7, 1979.

## "X

"Based upon over 11 years of experience investigating the Federal Firearms Laws and training as a Special Agent of the Bureau of Alcohol, Tobacco and Firearms, I know that persons who purchase firearms generally maintain these firearms in their residences along with receipts, invoices, sales slips, or other papers evidencing the purchase and transfer of these firearms.

## "XI

"That the information herein is derived from known and identified law enforcement officials, public officials, named citizen informants and first-hand knowledge of the affiant. That all of the citizen informants are non-professional."

Upon obtaining the search warrant, Burkel contacted the Burleigh County Sheriff's Department and the Bismarck Police Department, and requested assistance in serving the search warrant. Burkel and five other law enforcement agents then proceeded to Metzner's residence.

Metzner was stopped in his vehicle some distance from his home. He was placed under arrest and handcuffed. The arrest

occurred pursuant to an arrest warrant which was issued at the same time as the search warrant. The officers then transported Metzner to his home where they were going to execute the search warrant.

Upon entering the residence, the officers located three firearms, including the rifle described in the search warrant. In addition, they located several bags of a substance which, based upon their experience and training, they concluded was marijuana. Some of the marijuana was found in plain view when the officers entered a bedroom where two of the firearms were located. Other bags were discovered throughout the residence as the officers searched for sales receipts and other documents evidencing the purchase of the firearm.

In suppressing the marijuana, the district court determined that Burkel's affidavit in support of the search warrant was deficient. Consequently the plain view doctrine was not appropriate. The court held that there was an illegal entry into Metzner's residence and therefore the seizure of the evidence was illegal.

In reaching this conclusion the district judge stated that:

> "Then, at issue here is the first question of 'how does he know' that the defendant's home contained the rifle and receipts which were sought.

> "His affidavit states at paragraph X:
> " 'Based upon over 11 years of experience investigating the Federal Firearms Laws and training as a Special Agent of the Bureau of Alcohol, Tobacco and Firearms, I know that persons who purchase firearms generally maintain these firearms in their residences along with receipts, invoices, sales slips, or other papers evidencing the purchase and transfer of these firearms.'

> "No other facts are disclosed in his affidavit as to why there is any greater probability that the rifle and receipts were in the defendant's home than elsewhere. For example, it is just as logical that the defendant had this evidence in his car since that is the last location where the evidence was seen. There are absolutely no facts disclosed to indicate that the defendant ever removed the rifle or receipts from his vehicle. The Court could take judicial notice that in our part of the country, people often keep firearms in vehicles. Just look at the pickups that drive down the streets of any city or in the rural areas and the presence and predominance of firearms, seen through the back window, is most evident.

> "Therefore the operative question here is: How does the affiant or magistrate know that the defendant took the evidence out of his vehicle *AND* put them in his home, remembering that a warrant cannot be tested or justified by what it disclosed after a search. In other words, there were no facts, however slight, that were disclosed to the magistrate to indicate the firearm or receipts were removed from the vehicle. We simply don't know based on the affidavit that this evidence was moved to the defendant's home. There are no additional facts disclosed of that transfer occurring other than that 'people usually do so.' In answer to that, the Court notes: but then people usually don't do that either."

It is the State's contention that paragraph X of Burkel's affidavit is sufficient to establish probable cause to believe that the weapons were located with Metzner's home and that the search was conducted pursuant to a valid warrant.

■ We begin by noting that the evidence sought to be suppressed was not listed in the search warrant. It was seized in the defendant's home pursuant to the plain view exception to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Such a seizure is proper only if the officer's initial intrusion into this constitutionally protected area was itself valid and proper. Because there is neither evidence nor allegation of exigent circumstances, the resolution of this issue is necessarily dependent upon the validity of the search warrant issued by the United States magistrate.

## I.

The district court determined that Burkel's affidavit did not state facts which established probable cause to search Metzner's residence and that the magistrate erred when he issued the warrant.

When, as here, the district court's decision is a determination only of the narrow question whether the information contained in the affidavit satisfied the test of probable cause, the question is one of law based strictly on written evidence. We therefore review the sufficiency of the affidavit independent of the district court's determination.

A magistrate's factual conclusions in determining whether probable cause exists to issue a warrant are entitled to great deference. *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); *United States v. Brown,* 584 F.2d 252, 256 (8th Cir.1978); *State v. Berger,* 285 N.W.2d 533, 537 (N.D.1979). The magistrate, most closely acquainted with the facts supporting the warrant and often familiar with the affiant, is allowed to exercise his own judgment and to interpret the supporting affidavit as a whole in a realistic and commonsense manner; a doubtful or marginal case should be resolved in favor of his determination of probable cause. *United States v. Harris,* 403 U.S. 573, 577, 91 S.Ct. 2075, 2079, 29 L.Ed.2d 723 (1970); *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *State v. Berger, supra* 285 N.W.2d at 537; *State v. Iverson,* 187 N.W.2d 1, 28 (N.D. 1971), *cert. denied,* 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273. As long as there is a substantial basis for the magistrate's conclusion that probable cause exists, and the magistrate is performing his "neutral and detached" function, the judicial determination of probable cause will not be disturbed. In *Bastida v. Henderson,* 487 F.2d 860, 863 (5th Cir.1973), the Fifth Circuit Court of Appeals explained:

"In issuing a search warrant the magistrate must exercise his own judgment as to whether the facts alleged in the affidavit constitute probable cause for issuance of the warrant, he must act on the entire picture disclosed to him, he is entitled to use his common sense, and the courts have gone so far as to say that when this is done *his determination is conclusive in the absence of arbitrariness.*" [Emphasis added.]

*Accord, United States v. Allen,* 588 F.2d 1100, 1105–1106 (5th Cir.1979), *cert. denied sub nom., Perkins v. United States,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979), and cases cited therein.

## II.

The district court's order was based on its determination that there was not probable cause to believe that the rifle sought in Burkel's affidavit would be found in Metzner's home. The court points out that there were no facts which would indicate that the rifle had been removed from Metzner's vehicle and brought into his home other than Burkel's opinion that "people usually do".

To begin our analysis, we note that there was probable cause to believe that Metzner had purchased a rifle from Scheels's Hardware; that Metzner was a convicted felon; that his purchase of the weapon was a violation of federal law; and that the residence mentioned in the affidavit was Metzner's home. Probable cause to believe that Metzner had committed a crime does not, however, establish probable cause to search his house for evidence of that crime. In order to justify the search there must have been a nexus between the house to be searched and the evidence sought. *United States v. Green,* 634 F.2d 222 (5th Cir.1981). That nexus, however, need not be established by direct observation. The Fourth Amendment does not require an unbroken trail of evidence and allegation. *United States v. Bulgatz,* 693 F.2d 728, 731 (8th Cir.1982). The affidavit need not establish certainty—mere probability will suffice. It is only necessary that the facts and circumstances described in the affidavit would warrant a man of reasonable caution to believe that the articles sought were located "at the place to be searched". *Unit-*

ed States v. Maestas, 546 F.2d 1177, 1180 (5th Cir.1977). "For instance, evidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence." Id. at 1180.

As the Ninth Circuit Court of Appeals stated in United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir.1970), in the context of a case involving stolen property:

"The situation here does not differ markedly from other cases wherein this court and others, albeit usually without discussion, have upheld searches although the nexus between the items to be seized and the place to be searched rested not on direct observation, as in the normal search-and-seizure case, but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property. United States v. Teller, 412 F.2d 374 (7th Cir.1969); Aren v. United States, 382 F.2d 965 (8th Cir. 1967); Anderson v. United States, 344 F.2d 792 (10th Cir.1965); Porter v. United States, 335 F.2d 602 (9th Cir.1964)."

In the instant case we are concerned with a violation of the federal firearms laws and, in particular, with the whereabouts of a rifle allegedly purchased and possessed by a convicted felon. A magistrate considering the affidavit at issue here could logically conclude that a person would keep a rifle in his house. This would be particularly true of a convicted felon who would logically be concerned that his possession of the weapon remain secret. If, as the district court appears to suggest, there is some significance to be drawn from its determination that the rifle might just as logically have remained in the car, it is sufficient to say that the magistrate might well have concluded that a convicted felon would more logically secrete a rifle in his home, than in his car which carries a considerably diminished expectation of privacy and is more readily open to legitimate search by the authorities with a wider variety of justifications.

While we agree that the particular question presented is a close one, we choose to resolve the doubt in favor of sustaining the search, and the judgment of the magistrate. We recognize that determinations of probable cause often fall into a gray area in which reasonable persons might justifiably come to different conclusions. There is no "bright line" test by which to judge the sufficiency of an affidavit. See Illinois v. Gates, —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). The facts necessary for a determination of probable cause will necessarily vary from case to case, depending upon the nature of the crime and the objects sought. Upon review of the affidavit in question and consideration of the permissible inferences to be drawn therefrom, we conclude that the magistrate performed his "neutral and detached" function and that his determination of probable cause was not arbitrary. We therefore reverse the district court's order suppressing evidence.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

