**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Orlynn Mark ERICKSON, Defendant and Appellant.**

**Crim. No. 920195.**

Supreme Court of North Dakota.

Feb. 23, 1993.

---

Patrick F. Leier, Williston, for defendant and appellant.

Peter H. Furuseth, State's Attorney, Williston, for plaintiff and appellee.

LEVINE, Justice.

Orlynn Mark Erickson appeals from a judgment of conviction of unlawful possession of drugs entered upon a conditional plea of guilty under Rule 11(a)(2), NDRCrimP, after his motion to suppress evidence was denied. We hold that there was probable cause to issue the search warrant but that the officers exceeded the scope of that warrant in conducting their search. Accordingly, we reverse and remand.

At the time of his arrest, Erickson resided at 503 10th Street West in Williston. He occupied the west side of a ranch-style duplex. The east side of the duplex contained a separate apartment with a different address, 501 10th Street West. On March 14, 1992, police officers, investigating Erickson's possible role in local drug trafficking, removed and inspected a 250-gallon garbage dumpster, located in an alley behind the duplex. In the trash, the police found a small zip-lock bag, containing what appeared to be marijuana, cigarette packages and an envelope addressed to Erickson. The officers conducted another search of the dumpster the next day and found several plastic bags that smelled of marijuana, several marijuana cigarettes, a small amount of plant material and seeds, and a traffic citation issued to Erickson.[1]

On March 17, the officers sought a search warrant for Erickson's home and automobile. Dallas L. Carlson, a special agent for the North Dakota Bureau of Criminal Investigation, submitted an affidavit, stating:

"1. That pursuant to an ongoing investigation of Orlynn Mark Erickson concerning his involvement in transactions involving controlled substances information has been obtained that the above-referenced individual is and continues to be involved in the trafficking of controlled substances.

"2. Evidence has been obtained which illustrates the above-referenced individual possesses controlled substances, paraphernalia, records of transactions, money, and other items used in transactions of controlled substances. Said evidence consists of bags, marijuana cigarettes, and a white plastic cup with marijuana residue. Said evidence is indicative of the above-referenced activities.

"3. Evidence found was located in the garbage dumpster behind Orlynn Erickson's home. This was known to be his garbage because a traffic citation with his name on it was located with these materials. Also found in the garbage was a letter addressed to Mr. Erickson."

Prior to signing the search warrant, the magistrate took statements from Agent Carlson and Sergeant Scott Busching of the Williams County Sheriff's Department. Carlson essentially reiterated the information in his affidavit. Busching told the magistrate:

"I have received information from people that I know who have been involved in drug trafficking and Orlynn Mark Erickson's name has come up to me more than once as being one who deals to subdealers in Williston and the surrounding area.

"I've also had information that Mr. Erickson is armed. I have seen where he has purchased a 9-millimeter hand-gun. I have information that he has a shotgun with him pretty much all of the time. This leads me to believe that he has something that he is hiding, or it is also indicative of somebody that may be dealing in illegal substances."

On March 17, 1992, the officers executed the search warrant on 503 10th Street West. After entering Erickson's residence, Sergeant Busching descended a stairway that led to Erickson's basement. At the bottom of the stairway, he found a door

---

**1.** The cigarettes or "roaches" and the plant material field tested as positive for marijuana.

with a hasp and padlock along a wall that separated Erickson's basement from 501's basement. The door was unlocked, as the hasp was unscrewed from the door. Sergeant Busching opened the door and entered a room in the southeast portion of the duplex located under the main floor of the neighboring apartment at 501 10th Street West. In that room, he discovered a safe and a scale. The safe contained cash, a book on how to grow marijuana and a small film canister, containing marijuana residue. He also found marijuana in a tool box, located in the southeast basement room. The officers found additional marijuana in other portions of Erickson's residence as well as on Erickson.

Erickson was arrested and charged with possession of a controlled substance with intent to deliver. The intent to deliver portion of the charge was based upon the items found in the southeast basement room. Erickson moved the district court to suppress the evidence obtained from the search on the grounds that there was insufficient probable cause to issue the warrant and that the search warrant failed to adequately describe the place to be searched. Erickson also sought to suppress any statements he made in police custody and any evidence found on his person, on the ground that the evidence was the fruit of an unconstitutional search. The district court denied the motion on May 8, 1992. Erickson then offered, and the district court accepted, a conditional plea of guilty to the charge of the unlawful possession of a controlled substance. On appeal, Erickson contends there was insufficient evidence to support the issuance of a search warrant, that the warrant was defective, and that any statements made by him or any evidence found on his person should be suppressed.

■ "Probable cause to search does not require the same standard of proof necessary to establish guilt at trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." *State v.*

*Ringquist,* 433 N.W.2d 207, 212 (N.D.1988). We use the totality-of-the-circumstances test for reviewing probable cause, under which "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Ringquist, supra* at 211. Our duty is "simply to ensure that the magistrate had a 'substantial basis for ... concluding' that probable cause existed." *Id.* at 211, citing *Illinois v. Gates,* 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). "Sufficient information, rather than a 'bare bones' affidavit, must still be presented to the magistrate to allow that official to determine probable cause. That determination cannot be a mere ratification of the bare conclusion of others." *Ringquist, supra,* at 213.

■ Erickson contends that paragraph one of Agent Carlson's affidavit is a bare conclusion with no supporting facts about the credibility and reliability of the agent's information. We agree that the characterization in paragraph one of Erickson as a drug dealer is "nothing more than conclusionary information provided by unidentified people." *State v. Mische,* 448 N.W.2d 415, 421 (N.D.1989). Conclusions alone are insufficient for probable cause. *Id.* Only when reputation is demonstrated by specific underlying circumstances, may it be used to support a finding of probable cause. *State v. Handtmann,* 437 N.W.2d 830 (N.D.1989). But here, no circumstances are presented that would allow the magistrate to consider the reliability of the statement. We have "consistently required more than mere statements of reputation or unsupported conclusions and allegations to establish probable cause." *Id.* at 835.

■ In addition to paragraph one of the affidavit, Sergeant Busching testified he knew Erickson had purchased a nine-millimeter handgun. He added that he had been informed that Erickson often carried

a shotgun, which led Busching to believe that Erickson had something to hide. But, again, we do not know the veracity or basis of knowledge of the hearsay information. Accordingly, it is "bare bones" information that is insufficient to support probable cause. However, the magistrate was presented with evidence of criminal activity in the form of the marijuana and plastic bags found in the dumpster. In *State v. Ronngren*, 361 N.W.2d 224 (N.D.1985), this court concluded that evidence of marijuana found in a trash bag, reported by a neighbor to have been dragged from the defendant's property to the neighbor's yard, was sufficient to establish that the garbage bag originated at the defendant's residence. The question here is whether the incriminating items discovered in the dumpster can reasonably be connected to Erickson. We conclude they can be.

The citation and envelope found in the dumpster had Erickson's name on them. The location of the dumpster, behind Erickson's place of residence, fortified the implication that the dumpster was used by Erickson and that the trash was Erickson's. This evidence supplies a nexus between Erickson and the contraband as well as between the home to be searched and the evidence sought. *State v. Metzner*, 338 N.W.2d 799, 804 (N.D.1983). In *State v. Ronngren, supra*, there was additional evidence contributing to the determination of probable cause, which is not present in this case. But, we conclude that the direct evidence, in the form of marijuana and plastic bags, combined with the circumstantial link between the contraband, Erickson, and his home, support a determination of probable cause. We believe these facts warrant our cautious but considered application of the principle that "a doubtful or marginal case should be resolved in favor of [the magistrate's] determination of probable cause." *State v. Metzner, supra* at 804.

Erickson claims paragraph three of the affidavit is a false statement by omission. The police, Erickson says, deliberately misled the magistrate by failing to state that he lived in a duplex and that other residents in the neighborhood may have used the dumpster.

Challenges to the issuance of a search warrant, based on an allegation of a false affidavit statement, are governed by the standard set forth in *Franks v. Delaware:*

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." 438 U.S. 154, 155–156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

A hearing on Erickson's motion to suppress was held on May 4, 1992. No transcript of that hearing has been provided. Erickson raised the issue of the false affidavit statement in his brief to the district court. On May 8, that court ruled that the affidavit was "sufficient in both form and substance such as to preclude approving these motions to suppress." In approving the substance of the affidavits, the district court implicitly rejected Erickson's claim of a false statement and decided that the omission of the information that Erickson lived in a duplex, not a single-family dwelling, and that others may have used the dumpster, was neither intentional nor with reckless disregard for the truth. In his brief to support the motion to suppress, the only evidence Erickson submitted was a portion of Sergeant Busching's ambiguous testimony, elicited during cross-examination at the preliminary hearing, that the dumpster's location may imply use by others. But there is confusion about which

dumpster was being referred to and the district court obviously was not impressed. We are not convinced the district court's implicit finding was clearly erroneous.

Erickson also argues that the search of the southeast basement room in 501 was constitutionally defective because the search warrant failed to adequately describe the place to be searched, as required by the Fourth Amendment of the United States Constitution made applicable to the State by the Fourteenth Amendment and Article I, § 8, of the North Dakota Constitution.[2] Finally, Erickson contends the police exceeded the scope of the warrant by searching the room in 501 where the safe and scale were found.

Erickson's attack on the description in the warrant is based on *United States v. Hinton*, 219 F.2d 324 (7th Cir.1955). In *Hinton*, the magistrate issued a search warrant for an entire apartment building where there was arguably probable cause to search only one apartment. The Seventh Circuit Court of Appeals ruled the warrant was invalid because it failed to describe the place to be searched with sufficient particularity. The court reasoned that the warrant covered areas where there was no probable cause to search.

■ Here, the warrant for Erickson's premises describes with particularity the place to be searched: 503 10th Street West. The warrant does not extend to areas where probable cause is lacking. Consequently, the issue is not whether the warrant is defective, but whether the search conducted exceeded the scope of the warrant. On this question, we agree with Erickson that it did.

■ The authority to search is limited to the place described in the warrant and does not include additional or different places. *Keiningham v. United States*, 287 F.2d 126, 129 (D.C.Cir.1960). A search conducted pursuant to a search warrant may extend to the entire area covered by the warrant's description. "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate act of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820–21, 102 S.Ct. 2157, 2170–71, 72 L.Ed.2d 572 (1982). In some instances, the search may extend to structures deemed to be within the curtilage of the premises described in the warrant. *See United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). Areas adjacent to a place described in a warrant, that are under a suspect's exclusive management, control, and domain may at times be deemed part of the premises described in a warrant. *See Walbey v. State*, 644 S.W.2d 813 (Tex.App.1982) [patio area adjacent to apartment]; *cf. United States v. Elliott*, 893 F.2d 220 (9th Cir.1990) [storeroom behind apartment considered part of the premises].

We see no comparable circumstances that bring the search of the southeast basement room in 501 within the scope of "503 10th Street West." 501 occupies the east half of the duplex. 503 and 501 have their own basements, wholly separated by a wall between them with a door that allows access from one room to the other. The room searched by the police is in the basement of 501. The record indicates the door, opened by Sergeant Busching, is the only way to gain access to 501's basement from Erickson's basement. The room was not a common area, nor under the exclusive control and domain of Erickson; there is no evidence that Erickson had permission to enter the room or that the safe and scale were within the officer's plain view. The record indicates only that there was access to a portion of 501's basement through the unlocked but closed door, located on the side of the basement in 503, and that the lock on that door appeared to have been tampered with. A closed door does not invite unauthorized entry. *Compare State v. Sakellson*, 379 N.W.2d 779 (N.D.1985) [open door in private area of defendant's

---

2. The Fourth Amendment of the United States Constitution and Article I, § 8, of the North Dakota Constitution require that no warrant shall issue except those "particularly describing the place to be searched" and the "thing to be seized."

home did not allow officers to disregard knock-and-announce rule]. Mere access to 501 is insufficient to extend the reach of the warrant.

We conclude that the search of 501 exceeded the scope of the warrant. Consequently, the evidence found in 501 is illegal and must be suppressed. Reversed and remanded.

MESCHKE, J., concurs.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and serves as surrogate judge for the case pursuant to Section 27–17–03, NDCC.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NEUMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.

VANDE WALLE, Chief Justice, concurring specially.

No issue has been raised as to Erickson's standing to challenge the validity of the search. As the majority opinion observes, "the room was not a common area, nor under the exclusive control and domain of Erickson; there is no evidence that Erickson had permission to enter the room...."

In *State v. Lind*, 322 N.W.2d 826, 833 (N.D.1982), we determined it was "no longer desirable to continue the automatic-standing rule" announced by the United States Supreme Court in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which gave a defendant charged with crimes of possession of seized goods automatic standing to challenge the legality of a search which produced the evidence against him whether or not the defendant had an expectation of privacy in the premises. We did so on the basis of *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), which held defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violat-

ed. Most states have not retained the automatic standing rule. *See* 4 Wayne R. LaFave, *Search and Seizure* § 11.3, at 70 n. 314 (2d ed. Supp.1993), citing *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991).

If Erickson had no permission to enter the room he would not appear to have standing to raise a Fourth Amendment violation. *Salvucci, supra; United States v. Pitt*, 717 F.2d 1334 (11th Cir.1983), cert. denied 465 U.S. 1068, 104 S.Ct. 1421, 79 L.Ed.2d 746 (1984) [no expectation of privacy in room where tenant had no possessory interest]. If, on the other hand, he did have permission to enter the room, it is open to question whether or not the police exceeded the scope of the warrant. The very evidence Erickson marshals to attack the search as exceeding the scope of the search warrant suggests he has no standing to attack the search because he had no expectation of privacy in the premises. *Cf. State v. Crane*, 296 S.C. 336, 372 S.E.2d 587 (1988) [defendants objection to excess in execution resulting in search of lands owned by another likely to be rejected on grounds of lack of standing].

Nevertheless, if the issue of standing had been raised it may be that Erickson could have shown that he had permission to use the premises at least sufficient to create a legitimate expectation of privacy, i.e., one that society is prepared to recognize as reasonable. *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), quoting *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

Although the standing issue was not raised, I believe this court could raise the issue sua sponte, *see, State v. Cortis, supra*. But, as indicated above, this record does not definitively indicate that Erickson did not have standing. Therefore, I believe the majority opinion properly focuses on the scope of the search warrant.

Nevertheless, it appears the scope of the warrant is integrally intertwined with whether or not the place to be searched was particularly described within the mean-

ing of the Fourth Amendment to the United States Constitution and Article I, § 8 of the North Dakota Constitution. Although it would have been preferable had the affidavit and warrant indicated that this was a multiple dwelling building, and that only one apartment was to be searched, thus precluding a search of the other unit indiscriminately, I agree that the fact the two units had separate addresses, and the warrant listed only one address, meets the constitutional standard. However, as La-Fave observes in his treatise:

> "Assuming a designated subunit, the warrant may be executed only there and may not extend to another subunit, and this is so 'without regard to whether the officers could have anticipated ahead of time that they would encounter separate premises.'"

2 Wayne R. LaFave, *Search and Seizure* § 4.5, at 51 (2d ed. Supp.1993), quoting *State v. Devine*, 307 Or. 341, 768 P.2d 913 (1989) [warrant specifying address permits search of house so numbered, but not apartment having separate entrance and separate number over door].

At the preliminary hearing, in response to the question of whether the room in which the drugs were found was beneath "the other apartment," the executing officer replied "I believe it was" and that it "was correct" that the room was under the main floor of 501. Had it not appeared that the room searched was part of another dwelling unit not described in the warrant, I would vote to affirm for I do not believe the fact the door was closed and unlocked is necessarily significant. Surely in a search of premises described in a warrant, the executing officers may open doors in the premises which are closed, notwithstanding a "closed door does not invite unauthorized entry." *See, e.g., United States v. Elliott,* 893 F.2d 220, 222, 225 (9th Cir.1990) [search warrant for certain apartment allowed search of store room behind that apartment where that room was "accessible through a hole in the bathroom wall concealed by a burlap sack," as this "unconventional manner of access ... made the room part of the apartment."]

I concur in the result reached by the majority opinion.

RALPH J. ERICKSTAD, Surrogate Judge, concurs.