The STATE of North Dakota, Plaintiff and Appellant

v.

Jason FROHLICH, Defendant and Appellee.

Cr. No. 930058.

Supreme Court of North Dakota.

Sept. 29, 1993.

Allen M. Koppy (argued), State's Atty., Mandan, for plaintiff and appellant. Appearance by Janice Lawhead, Asst. State's Atty.

Wayne D. Goter (argued), Bismarck, for defendant and appellee.

MESCHKE, Justice.

The State appealed from an order suppressing all evidence seized during a search of Jason Frohlich's residence, and all statements made by Frohlich to officers during and after the search. We reverse the suppression order.

On July 23, 1992, the Morton County Court issued a warrant to search "116 East Main Street, Apartment A, in ... Mandan ... and/or ... [a] 1979 gold Pontiac bearing North Dakota license BHL 472 ... [for] [a] Remington 223 caliber, model 788 rifle with a Swift 6x scope...." Mandan Police Detective Gary Malo testified in support of the search warrant.

According to Malo, Herman Muhlbradt reported to the Bismarck Police Department on July 21, 1992, that the previous evening, a rifle with a scope attached to it and his wife's purse containing credit cards, a checkbook, and her driver's license were stolen from Muhlbradt's unlocked garage in Bismarck. On July 22, Julie Haibeck, a beautician employed at the Golden Comb in Mandan, discovered a suitcase protruding from a garbage dumpster in an alley between the Bookstore at 116 East Main and the Golden Comb at 118 East Main. Haibeck opened the suitcase and found Herman Muhlbradt's driver's license, hip waders, and work boots. She notified Muhlbradt, who went to the Mandan Police Department and the Golden Comb and identified his property.

According to Haibeck, while she and Muhlbradt were looking in the dumpster for more of Muhlbradt's stolen property, she noticed that "everybody from the apartment was coming out and watching ... every move

they were making, what they were doing." Haibeck then contacted Brad Pfliger, who works at Rent To Own, a neighboring business, and "told him to keep an eye out for the individuals that are living above the Bookstore." Haibeck was suspicious of these "[y]oung adults" because "they sleep all day, you don't see any movement all day, and there's anywhere from 20 to 50 people there in the evening, and that's when they come out and ... start moving around." Pfliger was also informed that Muhlbradt's rifle had not been recovered.

At approximately 2 p.m. on July 22, 1992, Pfliger saw two individuals leave the apartments above the Bookstore carrying a garbage bag that appeared to be covering a rifle with a scope. According to Pfliger, the young men "were holding it like a rifle, kind of picked it up like they were aiming at something. Even though it was wrapped ... it looked like a rifle with a scope on it and they were holding it in that fashion." Pfliger saw the men carry the garbage bag from the building and place it in the trunk of a gold Pontiac with license number BHL 472. Malo discovered that the car was registered to Donald and Doris Schmidt of Solen.

Malo learned from Kyle Grosz, the manager of the Bookstore and of the two apartments located above it, that apartment A was leased to Jason Frohlich and Joe Glas, but that several other people had been staying with them. Grosz reported that "most of the activity that goes on is out of Apartment A," and Malo testified that he personally observed that there was "always something going on" in apartment A during the evenings. The garbage dumpster used by the apartment tenants is located in an alley 20 feet from the back access door to the apartment building and is shared by some of the businesses in the area. Grosz told Malo that at 8 a.m. on July 23, 1992, he saw two young men carry "a good size" garbage bag out of the apartment building and place it in the trunk of a gold Pontiac. Grosz, Haibeck, and Pfliger confirmed that the gold Pontiac "is there all the time."

Malo testified that Tony and Brad Schmidt are the sons of Donald and Doris Schmidt. The magistrate, concerned over whether Tony or Brad Schmidt resided at apartment A; recessed the probable cause hearing to allow Malo to phone Donald and Doris Schmidt. Malo testified that Brad Schmidt answered the telephone.

> I asked him who I was speaking to and he told me it was Brad. I said, "Is your father Donald J. Schmidt?" and he said, "Yes." I says, "Do you know where Tony is at?" "You mean my brother?" I said, "Yes." He says, "He's in Mandan somewhere." I said, "Do you know where he is staying?" He says, "Yeah, but they don't have a phone." I said, "Well, I need to kind of get ahold of him. Could you tell me where he's living?" He said, "On Main Street above the Bookstore, Apartment A."

This testimony connected apartment A to the gold Pontiac, and also thereby linked the rifle with scope, wrapped in a garbage bag, to both the car and the apartment.

The magistrate determined that probable cause existed and issued the search warrant. Malo and other officers searched apartment A on July 24, 1992, and found Muhlbradt's stolen rifle and other stolen property. Frohlich confessed to police. Frohlich was charged with four class C felony counts of theft of property.

Frohlich moved to suppress the evidence, including all statements made to law enforcement officers during and after the search, on the basis that there was no probable cause for the search warrant. The trial court granted the motion, determining that there was no evidence presented at the probable cause hearing "which connected the crime with the individuals involved," and that the warrant was based on "mere[ ] suspicion." The prosecution appealed.

 Probable cause to search does not require absolute proof of criminal activity or the same standard of proof necessary to establish guilt at trial. *State v. Erickson*, 496 N.W.2d 555, 558 (N.D.1993); *State v. Berger*, 285 N.W.2d 533, 536 (N.D.1979). Rather, under the Fourth Amendment, probable cause to search exists "if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an

identifiable place." *State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988). We use the totality-of-the-circumstances test for reviewing probable cause, where " '[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Ringquist*, 433 N.W.2d at 211 [quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) ]. As we said in *State v. Mische*, 448 N.W.2d 415, 418 (N.D.1989), all information for probable cause must be considered together, rather than analyzed on a piecemeal basis.

▉ A trial court's decision on the validity of a search warrant is a determination only of whether the information before the magistrate established probable cause. *State v. Metzner*, 338 N.W.2d 799, 804 (N.D.1983). The question is one of law and, on appeal, we review the sufficiency of the information before the magistrate independent of the trial court's decision. *Metzner*. We give deference to a magistrate's factual findings in determining whether probable cause exists. *Metzner*. If there is a substantial basis for the magistrate's conclusion that probable cause exists, we will not disturb that conclusion on appeal. *State v. Dymowski*, 458 N.W.2d 490, 498 (N.D.1990). On this record, we conclude that the magistrate had a substantial basis for determining that probable cause existed to issue a search warrant for apartment A.

▉ We reject the trial court's evident conclusion that this search warrant was invalid because there was no "testimony given which connected the crime with the individuals involved." Generally, "a search warrant, unlike an arrest warrant, may issue, without the slightest clue to the identity of the criminal, if there is probable cause to believe that fruits, instrumentalities or evidence of criminal activity are located at the place to be searched." *United States v. Webster*, 750 F.2d 307, 318 (5th Cir.1984). In 1 LaFave, *Search and Seizure* § 3.1(b), at p. 546 (2d ed. 1987), Professor LaFave explains:

"There is no constitutional requirement that [a search] warrant name the person who owns or occupies the described premises * * *. The specificity required by the Fourth Amendment is not as to the person against whom the evidence is to be used, but rather as to the place to be searched and the thing to be seized." Indeed, "probable cause might well be established to suspect that illegal activity, evidence thereof or contraband, was at a given location without implicating any particular person." And this of course means that probable cause to search a particular place may exist without there also being probable cause to arrest a person who occupies that place. Consequently, a search warrant is not rendered invalid because of a lack of grounds to arrest any particular person. . . .

[Footnotes omitted]. *See also Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 1976–1977, 56 L.Ed.2d 525 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."); *United States v. Taketa*, 923 F.2d 665, 674 (9th Cir. 1991); *United States v. Tehfe*, 722 F.2d 1114, 1117–1118 (3d Cir.1983); *United States v. Melvin*, 596 F.2d 492, 495–496 (1st Cir.1979); *United States v. Besase*, 521 F.2d 1306, 1308 (6th Cir.1975); *State v. Doyle*, 336 N.W.2d 247, 250 (Minn.1983). The lack of evidence connecting "the crime with the individuals involved" did not render the search warrant invalid.

Frohlich argues that the State failed to show any nexus between the items found in the dumpster and his residence and offered no more than unsubstantiated suspicions, allegations, and reputation evidence to obtain the search warrant. We disagree.

In *Erickson*, we concluded that probable cause existed to issue a warrant to search the defendant's residence, part of a duplex with a separate apartment occupied by another, based on evidence found in a garbage dumpster located in an alley behind the duplex. In the dumpster, police discovered a small zip-lock bag, containing marijuana, cigarette packages and an envelope addressed to the

defendant. The next day police discovered in the dumpster several plastic bags that smelled of marijuana, several marijuana cigarettes, a small amount of plant material and seeds, and a traffic citation issued to the defendant. We found that the incriminating items discovered in the garbage dumpster could reasonably be connected to the defendant.

> The citation and envelope found in the dumpster had Erickson's name on them. The location of the dumpster, behind Erickson's place of residence, fortified the implication that the dumpster was used by Erickson and that the trash was Erickson's. This evidence supplies a nexus between Erickson and the contraband as well as between the home to be searched and the evidence sought.... [W]e conclude that the direct evidence, in the form of marijuana and plastic bags, combined with the circumstantial link between the contraband, Erickson, and his home, support a determination of probable cause....

*Erickson*, 496 N.W.2d at 559. Likewise, we believe that there was sufficient circumstantial evidence to supply a nexus between Frohlich's residence, apartment A, and the stolen property.

■ We agree that mere statements of reputation or unsupported conclusions and allegations are insufficient to establish probable cause. *See State v. Handtmann*, 437 N.W.2d 830, 835 (N.D.1989). But more was presented to the magistrate in this case. Here, the garbage dumpster used by tenants of the apartment building and some businesses in the area was located in an alley only 20 feet from the back access door to the apartment building. Named citizen informants, area business persons, reported not only their suspicions about the people living in apartment A, but also their personal observations of activities occurring between the apartment and an identified car, including at least one observation connecting both places with persons carrying a rifle with scope.

We have recognized that citizen informants are "presumed reliable," *State v. Boushee*, 284 N.W.2d 423, 430 (N.D.1979), and that their reliability " 'should be evaluated from the nature of [their] report, [their] opportuni-

ty to hear and see the matters reported, and the extent to which it can be verified by independent police investigation.' " *State v. Ronngren*, 361 N.W.2d 224, 228 (N.D.1985) [quoting *State v. Paszek*, 50 Wis.2d 619, 631, 184 N.W.2d 836, 843 (1971) ]. One business person discovered in the garbage dumpster stolen items belonging to the Muhlbradts. Aware of Muhlbradt's missing rifle, another business person reported that he observed two young men leave the apartment building carrying a garbage bag covering an object that appeared to be a rifle with an attached scope. They placed the bag in the trunk of a gold Pontiac car that the business persons reported was parked at the apartment building "all the time." While apartment A was leased to Frohlich, several other people had also been residing there. A son of the car's registered owners lived in apartment A.

■ Unlike *Erickson*, where a citation and envelope found with contraband in the dumpster directly linked the defendant's residence with the contraband, this case does not involve a direct link to Frohlich's residence. However, "circumstantial evidence alone may establish probable cause" to search. *United States v. Bucuvalas*, 970 F.2d 937, 940 n. 3 (1st Cir.1992). *See also United States v. Cale*, 508 F.Supp. 1038, 1040 (S.D.N.Y.1981). *Compare State v. VanNatta*, 506 N.W.2d 63, 70 (N.D.1993) [criminal conviction may be based on circumstantial evidence alone if it is of such probative force as to enable the trier of fact to conclude that defendant is guilty beyond a reasonable doubt]. We believe that, in this case, a chain of circumstantial links supplied the connection between the stolen property and apartment A.

Frohlich asserts that probable cause did not exist to search apartment A because the evidence presented to the magistrate showed only that the rifle had been placed in the trunk of the gold Pontiac and was no longer in the apartment. We disagree.

■ In *Metzner*, 338 N.W.2d at 804, we noted that the nexus between the residence to be searched and the evidence sought "need not be established by direct observation." In that case, there was probable cause

to believe that the defendant, a convicted felon, had unlawfully purchased a rifle and left with it in his car. We rejected the argument that probable cause to believe that the rifle would be found in the defendant's residence was lacking because no facts were presented to show that the rifle had been removed from the defendant's car and brought into his home.

> [W]e are concerned with a violation of the federal firearms laws and, in particular, with the whereabouts of a rifle allegedly purchased and possessed by a convicted felon. A magistrate considering the affidavit at issue here could logically conclude that a person would keep a rifle in his house. This would be particularly true of a convicted felon who would logically be concerned that his possession of the weapon remain secret. If, as the district court appears to suggest, there is some significance to be drawn from its determination that the rifle might just as logically have remained in the car, it is sufficient to say that the magistrate might well have concluded that a convicted felon would more logically secrete a rifle in his home, than in his car which carries a considerably diminished expectation of privacy and is more readily open to legitimate search by the authorities with a wider variety of justifications.

*Metzner,* 338 N.W.2d at 805. With connecting circumstances, the location of contraband may be inferred.

Our view of the *Metzner* holding in *Mische,* where we ruled that evidence of criminal activity unrelated to a defendant's home does not alone provide probable cause to search that home, is not helpful to Frohlich in this case. In *Mische,* officers obtained a warrant to search the Bismarck home of the defendant's parents based on evidence of the defendant's drug activities that occurred there. The officers found no contraband during the search of the Bismarck residence, but learned that the defendant was living in a trailer in Lincoln, a town near Bismarck. The officers then obtained a warrant to search the defendant's trailer in Lincoln, based in part on an affidavit of an officer stating that, in his experience, people who regularly deal in controlled substances keep them at their residence. In concluding that no probable cause existed for issuance of the second warrant, we reasoned:

> We have no doubt that there was more than ample evidence of Mische's criminal activity at the house in Bismarck where Mische at one time lived with his parents to justify the issuance of a search warrant to search that home. However, it was not until the officers searched that home and found no contraband that they discovered or acknowledged that Mische lived in a trailer in Lincoln. They had no actual knowledge of any activity at the trailer home in Lincoln....
>
> The only connection [between the defendant's suspected activities and the Lincoln residence that the officers] ... could produce is the general contention in Officer Becker's affidavit that individuals who regularly deal in controlled substances keep those substances at their residences; but in view of the activities linking Mische with the Bismarck residence, that conclusion, without further substantiation, appears to have been highly suspect. There is nothing in either affidavit, as there was in *Metzner,* to indicate the officers had verified the information concerning Mische's purchase of a home in Lincoln, whether he was presently living there, etc.

*Mische,* 448 N.W.2d at 421. Unlike *Mische,* this case does not involve a warrant to search a place remote from the place of suspected criminal activity.

■ Here, officers, through citizen informants, learned that fruits of a recent theft were found in a garbage dumpster used by the residents of the apartment building, that a rifle with an attached scope had also been stolen in the same theft, but not recovered, and that two young men were observed carrying a garbage bag containing what appeared to be a rifle with a scope to a car that, through further investigation, was linked to someone in apartment A. Under these circumstances, the State was not required to negate every other possibility about where the rifle might be located. *See United States v. Hendrix,* 752 F.2d 1226, 1231 (7th Cir. 1985). Rather, the magistrate may consider

the movable nature of the objects sought. *United States v. Leon–Chavez,* 801 F.Supp. 541, 551 (D.Utah 1992). As the court said in *United States v. Hillyard,* 677 F.2d 1336, 1339 (9th Cir.1982):

> When property to be seized is being moved from place to place, it may be reasonable to issue warrants directed to multiple locations, and officers need not confine themselves to chance by choosing only one location for a search. Here it was proper for the magistrate to direct a search of both of the locations identified in the affidavit because it was reasonable that the equipment would be found at either or both of the premises.

The circumstances in this case permitted a logical and reasonable inference that the stolen rifle was probably in either the car or apartment A. *See Metzner; United States v. Travisano,* 724 F.2d 341, 346 (2d Cir.1983); *United States v. Samson,* 533 F.2d 721, 723 (1st Cir.1976); *United States v. Queen,* 732 F.Supp. 1342, 1364–1365 (W.D.N.C.1990); *People v. Easley,* 34 Cal.3d 858, 196 Cal.Rptr. 309, 316, 671 P.2d 813, 820 (1983); *Commonwealth v. Burt,* 393 Mass. 703, 473 N.E.2d 683, 692 (1985); *State v. Flom,* 285 N.W.2d 476, 477 (Minn.1979); 2 LaFave, *Search and Seizure* § 3.7(d) (1987), and cases collected therein. There was a circumstantial connection of stolen goods to apartment A, as well as the car.

We conclude that, under the totality of all the circumstances, the magistrate had a substantial basis for determining that probable cause existed to issue a warrant to search apartment A for Muhlbradt's stolen rifle.

Accordingly, we reverse the trial court's suppression order.

VANDE WALLE, C.J., and SANDSTROM and NEUMANN, JJ., concur.

LEVINE, Justice, dissenting.

I would affirm the trial court's order suppressing evidence.

Conceding that this case, unlike *State v. Erickson,* 496 N.W.2d 555 (N.D.1993), does not provide a direct link between the stolen property found in the community dumpster and the defendant's apartment, the majority nonetheless validates the search warrant issued for defendant's apartment. It seems to me, given the careful rationalization we engaged in to find probable cause in *Erickson,* that *Erickson* should be viewed as providing the minimum requirements for probable cause to search a residence based on evidence found in a community dumpster, and not, as the majority demonstrates, the upper limits.

In *Erickson,* the defendant's name and address, found on two separate items in the dumpster behind the defendant's residence, were essential components to this court's finding of a sufficient nexus between the defendant's residence and the evidence sought under the warrant. *Id.* at 559. In *State v. Ronngren,* 361 N.W.2d 224, 228 (N.D.1985), we found a sufficient nexus between evidence of illegal drugs and the defendant's residence where police found evidence of marijuana in a trash bag, which reportedly had been dragged by a dog from the defendant's yard. Here, the nexus between the rifle and the defendant's apartment simply does not meet the standard implied in *Erickson* and *Ronngren.* The majority admits as much: "Unlike *Erickson,* . . . this case does not involve a direct link to Frohlich's residence. However, . . . [w]e believe that, in this case, a chain of circumstantial links supplied the connection between the stolen property and [Frohlich's apartment]." *Ante* at 733–734. The majority's "chain of circumstantial links" consists, apparently, of stolen property found in a dumpster used by at least two apartments and several nearby businesses, reports by citizen informants of their personal observations of completely legal activities outside the defendant's apartment, and the sighting of two men carrying a large green trash bag containing a rifle-like object out of the defendant's apartment building. Each of the so-called "links" has such an attenuated and speculative connection with either the defendant or his apartment that the chain forged is not one I'd wrap around anything, let alone allow to create probable cause to enter one's place of residence. Despite the majority's ostensible misconstruction, *see ante* at 733, the issue in this case is not whether sufficient circum-

stantial evidence exists to establish probable cause. Rather, the issue is whether "a chain of circumstantial links" satisfies the implied "direct link" requirement of *Erickson* and *Ronngren.* I would not stretch our holdings in *Erickson* and *Ronngren* to include this ephemeral "chain of circumstantial links."

Our decision in *State v. Metzner*, 338 N.W.2d 799 (N.D.1983), was a particular application of the nexus requirement. In *Metzner,* we found a sufficient nexus where probable cause that the defendant had committed a crime existed and evidence of the crime was likely in the defendant's residence: "For instance, evidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence." *Id.* at 805 [quoting *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir.1977) ]. While we stated in *Metzner* that one "could logically conclude that a person would keep a rifle in his house," *id.,* a sufficient nexus exists only if there is probable cause to believe the defendant committed a crime. Here, the stolen property in the community dumpster and the garbage bag containing a rifle-like object do not amount to probable cause to believe that either Frohlich or Schmidt had stolen the rifle. Furthermore, Metzner, a convicted felon, purchased a rifle and placed it in his vehicle, creating probable cause to believe he removed the rifle from his vehicle to his home because one "could logically conclude that a person would keep a rifle in his house." Metzner did not remove a rifle from his home and place it in a vehicle. If he had, there would have been probable cause only to search the vehicle, because the rifle was no longer in the residence. Therefore, *Metzner* does not apply.

This case is terribly disconcerting. Too many people used or had access to the dumpster and too many people are in comparable positions in our society. Too little evidence, indeed none at all, links the stolen property in the dumpster to the defendant in his apartment, unless probable cause is to be diluted, as it was in this case, in all cases involving young people who "sleep all day" and have friends over in the evenings.

I believe that until now we had established a safety zone against unreasonable intrusions into our privacy by carefully requiring probable cause to be a real prerequisite for search warrants and not an ethereal formality that one easily may avoid. *E.g., State v. Mische,* 448 N.W.2d 415 (N.D.1989); *State v. Handtmann,* 437 N.W.2d 830 (N.D.1989). The majority's decision puts the sanctity of the home and the protection afforded it by the requirement of probable cause at risk by relying on suspicion, speculation and conjecture to establish probable cause and achieve a desired result.

I respectfully dissent.