**Etim E. JAMES, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. A. No. 87–1246.

United States District Court, District of Columbia.

April 11, 1989.

the parties as well as an unreasonable imposition on the time and resources of this Court.

Etim E. James, Washington, D.C., pro se.

Michael L. Martinez, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff brings this action *pro se* against the United States[1] and Terry Thomson, an officer in the United States Park Police, alleging various common law and constitutional torts. Plaintiff's complaint contains allegations of unlawful arrest, improper use of force, unreasonable detention, and resulting economic, physical and emotional harm. Presently before us is defendants' Motion to Dismiss or in the Alternative for Summary Judgment. For the reasons that follow, we grant defendants' motion and enter summary judgment in their favor.

## I.

The episode that precipitated this lawsuit occurred on November 11, 1986. At approximately 12:30 a.m., plaintiff was driving a taxi cab near the intersection of 14th and K Streets, N.W. in the District of Columbia. Upon observing the taxi cab's failure to slow down for a yellow traffic light, defendant Officer Thomson checked the li-

---

1. Plaintiff originally brought suit against the Department of Interior. This court dismissed the claims against the Department of Interior on July 8, 1988. On August 20, 1988, plaintiff amended his Complaint to name the United States as a defendant.

cense tags of the vehicle against his copy of the Washington Area Law Enforcement ("WALES") computer book, which indicated that the District of Columbia driver's license of the owner of the registered taxi had been suspended by the District of Columbia. Thomson signaled for the taxi cab driven by plaintiff to pull over by the side of the road. When Thomson asked to see plaintiff's driver's license, plaintiff produced a valid Virginia Driver's license issued approximately one month earlier on October 1, 1986. Believing that plaintiff was driving with a suspended D.C. driver's license, Officer Thomson arrested and handcuffed plaintiff for operating a motor vehicle in the District with a suspended D.C. license. At this point the parties' version of the facts diverge.[2]

According to plaintiff, he asked Thomson why he was so sure that his driver's license had been suspended, whereupon Thomson allegedly kicked him, told him he had no right to ask questions, and threw him inside the police car. Plaintiff maintains that as he was being "dumped" inside the police car, he hit his head against the back seat, causing pain to his head and neck. According to defendant Thomson, plaintiff confirmed that he had been driving with a suspended D.C. license before he was arrested. Thomson claims that he placed plaintiff in the back seat of the police car carefully and at no time kicked or threw plaintiff or told him that he had no right to ask questions. From here on the parties' substantially agree on the facts.

Plaintiff was driven to the Park Police substation at Hains Point in Washington, where Thomson prepared the necessary paperwork to process plaintiff's arrest. Plaintiff was issued a citation for operating a vehicle with a suspended D.C. license, given a citation date of January 12, 1987, and released at approximately 2:30 a.m.[3]

Incident to plaintiff's arrest, Thomson took custody of plaintiff's "Hacker's Li-

cense" because the license would not have been valid without a valid D.C. driver's license. The day after plaintiff's arrest, November 12, 1986, Thomson forwarded plaintiff's "Hacker's License" to the D.C. Hack Inspector's Office. Without his "Hacker's License," plaintiff was unable to operate his taxi. After waiting almost two months, plaintiff went to the Hacker's office on December 31, 1986 to report the incident to the Hacker's inspector. At that time, plaintiff learned that Thomson had previously turned in plaintiff's "Hacker's License," which was released to him. Plaintiff resumed working the next day.

## II.

■ We previously stayed our consideration of defendants' motion to enable plaintiff to file proof of service upon Officer Thomson as well as any supplemental materials regarding defendants' motion for summary judgment. Although plaintiff has filed an affidavit and attachments, which indicate plaintiff mailed a summons and complaint to Officer Thomson, there is no indication in the record that Thomson ever signed for it or ever received it. Nor is there any indication that Thomson was personally served. As we explained to plaintiff in a previous order, Rule 4(d) of the Federal Rules of Civil Procedure requires personal service of the summons and complaint upon each individual defendant. Without personal service, this court is without jurisdiction to render judgment against defendant Thomson in his individual capacity. See *Hutchinson v. United States*, 677 F.2d 1322, 1328 (9th Cir.1982); *Micklus v. Carlson*, 632 F.2d 227, 240 (3d Cir.1980). The claims asserted against Thomson in his individual capacity must therefore be dismissed. *Id.*

■ Additionally, even if Thomson had been properly served, summary judgment would be appropriate in this case due to

---

**2.** Plaintiff's account is taken from his Complaint and Affidavits filed July 19, 1988; defendants' version is taken from the Affidavit of Thomson, Defendants' Motion to Dismiss or for Summary Judgment, Exhibit 1, Declaration of Officer Terry D. Thomson.

**3.** On December 3, 1986, Thomson went to the D.C. Superior Court to "paper" the charge against plaintiff. However, Thomson learned that plaintiff had no traffic warrants against him and therefore decided to "no paper" plaintiff's November 11, 1986 arrest.

Officer Thomson's entitlement to qualified immunity from the claims asserted by plaintiff. Federal officials acting within the scope of their official duties are generally insulated from suit if (1) there existed reasonable grounds for the belief that the challenged action was appropriate, and (2) the officer acted in good faith. The qualified immunity of a federal official attaches unless the official violates a clearly established right of the plaintiff or acts unreasonably under the circumstances. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). As the Supreme Court has explained, qualified immunity protects from suit "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

■ Regarding plaintiff's false arrest claim, a claim for false arrest can be defeated by the arresting officer's demonstration that he had either probable cause [4] or a reasonable basis to believe that a crime had been committed and that the officer acted in good faith. *See Koroma v. United States,* 628 F.Supp. 949, 952 (D.D.C.1986); *Wilcox v. United States,* 509 F.Supp. 381, 384 (D.D.C.1981). Viewing the facts in the light most favorable to plaintiff, and taking as true plaintiff's representation that his D.C. license was never suspended, we nevertheless find that Officer Thomson's conduct meets the standard of good-faith reasonableness. As the Court of Appeals for the District of Colum-

bia recently clarified, the issue "turns not on whether probable cause to arrest [plaintiff] in fact existed, but on whether [the officer] has established as a matter of law that a reasonable officer in [his] shoes would have believed it to have existed." *Martin v. Malhoyt,* 830 F.2d 237, 263 (D.C. Cir.1987). We find that a reasonable officer in Thomson's shoes, having read the WALES computer report indicating that the D.C. license of the registered owner of the taxi driven by plaintiff was suspended and having been with presented only with a Virginia driver's license issued one month previously, would have believed there to be probable cause to arrest plaintiff for the offense of driving with a suspended D.C. license.[5]

■ Thomson is similarly entitled to qualified immunity from plaintiff's other claims [6], the most serious of which appears to be the excessive force claim. In *Martin v. Malhoyt,* 830 F.2d 237, 261 (D.C.Cir. 1987), the Court of Appeals for the District of Columbia established a reasonableness test for excessive force claims:

> the balancing test is both objective and fact sensitive; it looks to the "totality of the circumstances" known to the officer at the time of the challenged conduct, and accords a measure of respect to the officer's judgment about the amount of force called for in a quickly developing situation.

Plaintiff maintains that when he asked Thomson "why he was so sure that [plaintiff's] permit was suspended," Thomson kicked him and threw him in the back seat of the police car.[7] Affidavit of [Etim E.

---

4. Probable cause need not be proven in the constitutional sense. *See Lucas v. United States,* 443 F.Supp. 539, 543 n. 2 (D.D.C.1977), *aff'd,* 590 F.2d 356 (D.C.Cir.1979).

5. We note that plaintiff does not claim that he ever attempted to provide Officer Thomson with his D.C. license or that he even had it in his possession on the night in question.

6. As to plaintiff's claim for unreasonable detention, we find that plaintiff's detention of at most two hours, on these facts, falls far short of meeting the threshold of stating a constitutional violation. *See Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (finding no

constitutional violation involved in mistaken arrest and eight day imprisonment of plaintiff). Plaintiff's economic harm claim is also flawed. Plaintiff first contacted the Hacker's Inspector Office on December 31, 1986—almost two months after the incident on November 11, 1986. Upon contacting the Inspector's Office, plaintiff's Hacker's License was immediately returned to him. There appears to be no reason why plaintiff could not have obtained his Hacker's License earlier had he merely inquired about it.

7. We note that whether Thomson kicked plaintiff and threw him into the back seat of the police car is in dispute. We take plaintiff's

James regarding] Improper Use of Force, attached to Plaintiff's Supplemental Materials. In the process, plaintiff hit his head on the back seat rest of the police car and injured his head. *Id.* Taking these facts as true, we find that plaintiff's claims do not rise to the level of a constitutional violation. Although plaintiff's allegation that he was kicked by Thomson causes the Court some concern, plaintiff does not suggest that he was injured in any way from the alleged kick. Rather, plaintiff claims to have sustained injuries to his head and neck as a result of hitting his head against the back seat of the police car. *See id.* Plaintiff does not claim to have consulted a doctor for his injuries. There is no suggestion of any permanent injury. Plaintiff states that, by applying a "hot water treatment" the night he sustained his injuries and taking valium for his subsequent headaches, his problems eventually disappeared.

We, of course, disapprove of any unnecessary force by police officers. However, looking at the totality of the circumstances known to Thomson at the time, we cannot say that the mode of arrest was unreasonable under the circumstances. Considering the time and location of the incident as well as the manner in which plaintiff met the officer's assertion that his license was suspended—by asking "why he was so sure" the license was suspended rather than say, explaining the situation—we believe a reasonable officer would have asserted a similar amount of force, which did not seriously or permanently injure plaintiff, in an attempt to subdue and control the situation. In sum, we find that Thomson's "total conduct, objectively appraised, added up to a reasonable mode of arrest." *Martin*, 830 F.2d at 262; *see also Bovey v. City of Lafayette*, 586 F.Supp. 1460, 1468–69 (N.D.

Ind.1984), *aff'd*, 774 F.2d 1166 (7th Cir. 1985).[8]

An order consistent with the foregoing is entered this day.

---

version of the facts as true for the purposes of this motion.

**8.** Plaintiff asserts liability of the United States under the same theories as alleged against the officer. Because we find as a matter of law that

the arresting officer acted in good faith and that his conduct was reasonable under the circumstances, the claims against the United States will be dismissed as well.