**UNITED STATES of America, Plaintiff,**

v.

**Frederick Shawn WILLIAMS, Defendant.**

**No. 2:96 CR 114 B.**

United States District Court,
D. Utah,
Central Division.

Oct. 3, 1997.

---

Leisha Lee–Dixon, U.S. Attorney's Office, Salt Lake City, UT, for Plaintiff.

Robert Booker, Booker & Associates, Salt Lake City, UT, for Defendant.

## ORDER

BENSON, District Judge.

### *INTRODUCTION*

The Defendant, Frederick Shawn Williams, was indicted by a grand jury and charged with possession of a controlled substance with intent to distribute under 21 U.S.C. § 841(a)(1). Defendant filed a motion to suppress evidence obtained form a warrantless search of his vehicle. That motion was referred to a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). On August 28, 1997, the Magistrate Judge issued a Report and Recommendation to this court recommending that Defendant's motion to suppress be denied. Defendant filed an objection to the Magistrate Judge's Report and Recommendation on September 10, 1997 stating

without particularity his objection to the Report and Recommendation but requesting an extension of time in which to file more particularized objections. With his objections, the Defendant filed a motion to dismiss based upon an alleged violation of his constitutional and statutory rights to a speedy trial. It is those motions that are currently before the court.

## DISCUSSION

Defendant's motion for an extension of time in which to file more particularized objections to the Magistrate Judge's Report and Recommendation is DENIED. The court hereby finds that the Defendant's objection to the Magistrate Judge's Report and Recommendation inadequately specifies his objections to the Magistrate Judge's proposed findings and, therefore, the court ADOPTS the Report and Recommendation of the Magistrate Judge in its entirety. Finally, the court REFERS the Defendant's motion to dismiss based upon the Defendant's right to a speedy trial to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B).

## REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

The defendant, Frederick Shawn Williams, has been indicted by a grand jury and charged with possession of 36 kilograms of phencyclidine (PCP) with intent to distribute (21 U.S.C. § 841(a)(1)). The defendant made a motion to suppress evidence obtained from a warrantless search of defendant's vehicle (File Entry # 63). Defendant submitted a memorandum in conjunction with the motion to suppress (See File Entry # 63). The memorandum asserted, first, that defendant was in custody of the officer when a search of defendant's person and vehicle occurred and that there was no valid detention of defendant, the search made of the vehicle was unconstitutional and that no valid consent was given for the search of the vehicle. The United States submitted a response contending the actions of the officer involved were constitutional, the search of the vehicle was legal, and the evidence properly seized (File Entry # 65). Defendant submitted a response (File Entry # 67).

A hearing was held on the defendant's motion to suppress. The matter has been referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). This report and recommendation is submitted pursuant to the reference on the defendant's motion to suppress.

### Evidence

At the hearing on the motion to suppress, Deputy Sevier County Sheriff Phil Barney testified that on June 11, 1996 at 1:00 a.m. he was at milepost 48 on 1–70 talking with Deputy Sheriff Ogden (Tr. p. 6). Ogden was also in Barney's vehicle. The vehicle was stationary facing west. A vehicle came eastbound which was checked by radar which reported the vehicle to be traveling 80 mph. The officers pursued and stopped the vehicle about one mile from where it was detected (Tr. p. 7). The speed limit on the roadway was 75 mph. The officer approached the driver and asked for a driver's license and registration. A license was produced and a rental agreement for the vehicle. The license the driver produced was a temporary Georgia license (Def. Exh. A, Tr. p. 8). The license is dated March 22, 1996 and indicated it was good for 45 days as an interim license (Id. Exh. A). On its face it had expired by June 11, 1996. The officer inquired about the defendant's destination and was told by the vehicle driver, defendant Williams, that he was going to Denver because relatives were graduating from college, but he didn't know what college (Tr. p. 9). The officer returned to his vehicle and ran an NCIC check and a crime information check. There were no warrants on defendant. The dispatcher contacted the officer and advised him that defendant's Georgia license had been suspended (Tr. p. 9). The suspension was in April, 1996 (Id.). The defendant, under the circumstances, could not drive. The vehicle had been rented the day before for seven days. It was rented in Los Angeles (Tr. p. 10).

The officer wrote a citation for driving on a revoked or suspended license and took defendant into custody by handcuffing him. The officer asked the defendant for the names of

his relatives who were graduating from college. Defendant had some difficulty in coming up with the names and couldn't give an address to contact them. He said he would have to call to California and ask someone for their address (Tr. pp. 10–11). Defendant said he lived in Los Angeles and was a security guard.

The officer asked the defendant about three boxes in plain sight in defendant's vehicle which were marked Bacardi rum. Defendant said they contained rum and that they were graduation gifts. There were a couple of small bags in the vehicle. Barney started to inventory the vehicle and turned one of the rum boxes over. It had been opened and repasted. He opened the box and removed a bottle. The seal on the bottle had been broken. The bottle was broken. The seals on the other bottles had been broken (Tr. pp. 11–12). He opened the bottle and smelled it, it was PCP. The officer had smelled PCP several times before (Tr. p. 12). The vehicle was towed to the Sheriff's office. Defendant was given a *Miranda*[1] warning (Tr. pp. 12–13). A further search of the vehicle at the Sheriff's office revealed that each of the boxes of rum, 36 bottles, altogether, were full of PCP (Tr. p. 14).

The vehicle had been rented to defendant Williams (Tr. p. 15). The NCIC or vehicle records check indicated the suspension of defendant's license occurred on April 29, 1996 according to the information transmitted to the officer. The officer advised defendant his license had been suspended for an insurance problem, which was not surprising to the officer because he said a lot of persons get insurance to get a license and then cancel it (Tr. p. 18). The temporary permit had a date of 2/13/2000 but was only a 45 day interim license. Defendant produced no other license (Tr. p. 19, Defendant Exh. A). The defendant may have had insurance on the rental vehicle under the rental contract (Exh. B, Tr. p. 20), however, that would not change his status as an unlicensed driver. Defendant was arrested for driving on a suspended license (Tr. p. 20). Defendant would have to see a judge and post bail (Tr. p. 21). About $600 was seized from the defendant after narcotics were found in the vehicle (Tr. p. 22). At 1:00 a.m. it was not feasible to check on anything about the license. The officer testified he conducted an inventory search on the highway (Tr. p. 27). This is to account for things in the vehicle where it is taken into custody. The license plate check indicated the vehicle was registered to the Hertz Corporation (Tr. pp. 29–30).

Sevier County has a vehicle inventory policy (Tr. p. 32, Defendant Exh. F). A vehicle inventory form was filled out by the officer (See Exh. G, p. 35). This was at the Sevier County Sheriff's Office.

Frederick Shawn Williams, the defendant, testified that he was arrested on June 11, 1996 on 1–70 (Tr. p. 36). He rented a car from the Hertz Company sometime shortly before he was stopped. To get the vehicle he produced Exhibit A, the temporary license from Georgia. He was not made aware of any problem (Tr. pp. 37–38). He obtained insurance on the vehicle through Hertz (Tr. p. 38).

When the defendant rented the vehicle he was not asked if he had any other insurance (Tr. p. 44). There was a video record made of the stop. The event was filmed from Officer Barney's vehicle (Pla. Exh. 1).

The video reflects that at about 12:55 a.m. the officers stopped defendant's vehicle. Officer Barney went to the driver's side of the vehicle and asked for a driver's license and registration. He received a license and thought it was an identification card, but defendant said it was his license. A rental document was presented as the officer asked if it was a rental vehicle. Officer Barney also told defendant he was going 80 mph which was "too fast." The officer asked defendant if he lived in Decatur, he said he now lived in California. In response to the officer's questions he said he was going to Denver. His cousins were graduating from college.

Officer Barney returned to his vehicle and called in a records check on the vehicle and driver. He received information that the vehicle was a Hertz rental and there was no

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

problem with the vehicle. The triple I criminal history check indicated defendant had a drug paraphernalia arrest in January 1986, reference the United States Attorney, Washington, D.C.

A computer check indicated defendant's license, which would have expired 2/13/2000, was suspended April 29, 1996. The reason for the suspension is not clearly determinable from the audio on the video tape. Officer Barney remarked that car rental was not properly obtained if defendant's license had been suspended.

Officer Barney returned to the vehicle and asked defendant additional questions about his journey, his cousins, and his residence in California. He asked about cash and drugs. Defendant denied any arrests and said he had $500 cash in his possession. The officer asked defendant to tell the truth, apparently referring to defendant's claim not to have been previously arrested, whereas the Triple I had recorded a drug paraphernalia arrest. Defendant was outside of his vehicle at the time.

A flashlight shined in the car and the officer commented on the Bacardi Rum boxes which defendant stated he was taking to the graduation. The officer appears to shine a light in the car, or the officer gets into the car, the video does show clearly, what was occurring but nothing was seized or taken. The defendant was handcuffed at 1:19 a.m. Officer Barney went back to the car, a station wagon opened the back door and looked in the boxes. A bottle was removed and opened and immediately identified as PCP. Thereafter, the defendant was given a *Miranda* warning and solicited to work for the police. He said nothing. He acknowledged he understood his rights. The vehicle was removed to the Sevier County Sheriff's Office by the other officer, Deputy Ogden.

Based on the above evidence the court enters the following.

### Findings of Fact

1. On June 11, 1996 at about 12:55 a.m. on 1–70 at milepost 48 in Southern Utah, Deputy Sheriff Phil Barney of the Sevier County Sheriff's Office, along with another deputy, was conducting a stationary patrol observation. Barney observed a vehicle going eastbound. Deputy Ogden was in same the vehicle with Barney. The vehicle was checked on radar and was traveling 80 mph in a 75 mph zone. Because the vehicle was speeding in violation of Utah law, it was pursued. Officer Barney could not tell who was in the vehicle or how many persons were in the vehicle.

2. The vehicle was pulled over about one mile from where it was observed. Officer Barney approached the driver and asked for a license and registration. The defendant Frederick Shawn Williams was the driver. He produced a temporary Georgia driver's license which bore defendant's name and picture. It was a 45 day interim license issued on March 22, 1996 and it had expired. The defendant produced a rental agreement from Hertz rather than the vehicle registration. The officer asked about the license and defendant said it was his license; it showed a Decatur, Georgia address. The officer asked if defendant resided in Decatur and defendant said no, he lived in California. He said he was going to Denver to relatives' graduation from college. He didn't know what college and said he'd have to call when he got there.

3. Officer Barney returned to his patrol car and ran a vehicle, license, and Triple I criminal history check. After a few minutes the report came back that defendant had a prior drug paraphernalia arrest, apparently in Washington D.C. The report on the vehicle indicated it was a leased vehicle from Hertz. The report on defendant's driver's license was that it was suspended April 29, 1996. There may have been some mention of lack of insurance as the basis of the suspension. However, defendant had no valid license and could not drive in Utah. There is no evidence or other showing that defendant had a valid license. Given the time of night the officer could not call to Georgia to double check. The license was in fact suspended.

4. Officer Barney wrote out a citation for driving on a suspended license. He intended to arrest defendant and take him before a local judge. Barney exited the patrol vehicle and went to defendant and had him exit the

vehicle. He further questioned defendant about whether he had been previously arrested and his travel destination. He looked into the vehicle from the outside and could see three boxes of Bacardi rum. Defendant said they were graduation gifts. The officer looked into the vehicle, it is not clear if the officer was inside or outside the vehicle, it is concluded, based on his testimony, that he was inside the vehicle, but seized nothing at that time. He did notice the rum boxes had been opened. The officer handcuffed the defendant which was an arrest.

5. Officer Barney then searched the vehicle, a station wagon and in a Bacardi rum box he found a bottle that appeared to have been previously opened. He opened the bottle and immediately detected PCP, phencyclidine, a controlled substance. It was determined the seals on the other bottles in the boxes were broken. Defendant was given a preinterrogation warning and was asked to cooperate, but he did not indicate a significant interest at that time. Defendant was taken to the Sevier County Sheriff's Office. The vehicle was also taken to the office. It was then inventoried and searched and thirty six bottles of PCP found and seized.

### Discussion

The defendant does not challenge the stop of his vehicle. The initial stop was lawful for a speeding violation, Utah Code Ann. § 41-6-46. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *United States v. Botero–Ospina,* 71 F.3d 783, 787 (10th Cir.1995); *United States v. Leos–Quijada,* 107 F.3d 786, 792 n. 5 (10th Cir.1997) (stop for speeding); *United States v. Hinojos,* 107 F.3d 765, 766 (10th Cir.1997) (stop for speeding); *United States v. Shareef,* 100 F.3d 1491 (10th Cir.1996) (stop proper where vehicle going 40 mph in a 30 mph zone).

■ Having lawfully stopped the defendant's vehicle the officer could properly ask

defendant to produce a license and registration and could run a computer check. *United States v. Elliot,* 107 F.3d 10, 13 (10th Cir.1997); *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1483 (10th Cir.1994); *United States v. Walker,* 941 F.2d 1086 (10th Cir. 1991). The officer may run a Triple I criminal history check on the driver to determine criminal history *United States v. McRae,* 81 F.3d 1528, 1535, n. 6 (10th Cir.1996). See also *United States v. Mendez,* 118 F.3d 1426 (10th Cir.1997).

■ In addition, routine questions about travel plans may be asked without exceeding the scope of a traffic stop. *United States v. Hernandez,* 93 F.3d 1493, 1499 (10th Cir. 1996); *United States v. Gonzalez–Lerma,* supra p. 1484; *United States v. Turner,* 928 F.2d 956, 958–59 (10th Cir.1991). In this case, Officer Barney followed the proper routine and the procedure was lawful. The driver's license produced by defendant was not valid on its face and had expired.

■ Officer Barney went to his vehicle and ran a computer check which revealed defendant's Georgia license had been suspended. No evidence contradicts that conclusion.[2] The defendant had no valid driver's license and could not lawfully operate a motor vehicle in Utah. Utah Code Ann. § 53–3–227(1) provides:

(1) "A person whose license has been denied, suspended, disqualified, or revoked under this chapter or under the laws of the state in which his license was issued and who drives any motor vehicle upon the highways of this state while that license is denied suspended, disqualified, or revoked shall be punished as provided in this section."

The operation of defendant's vehicle under the circumstances was a class C misdemeanor under Utah law. The officer could not let the defendant operate a vehicle and therefore could not, as the defendant suggests, merely issue a citation and let him drive off.[3] Be-

---

**2.** Georgia law requires the operator of a vehicle have insurance. § 40–6–10 Code of Georgia (1997). A driver's license may be cancelled, suspended, or revoked for failure to have insurance. § 40–5–71, Code of Georgia (1997).

**3.** The defendant would only be allowed to leave if he produced a "valid" license *United States v. Anderson,* 114 F.3d 1059 (10th Cir.1997); *United States v. Mendez,* supra p. 3. See *United States v. Shareef,* 100 F.3d 1491, 1500 (10th Cir.1996) ("Similarly, police are not required to release a

cause there was probable cause that defendant had committed a violation of Utah law he could be lawfully arrested and taken before a judge. Utah Code Ann. § 77–7–2(1) and (3).

■ Further, it was proper pursuant to the stop to require defendant to exit the vehicle. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Maryland v. Wilson,* —— U.S. ——, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). The defendant claims Officer Barney acted improperly in searching the vehicle before arresting defendant by placing him in handcuffs. The evidence is not fully clear on this event, but defendant's position is accepted. Merely shining a light into the vehicle and observing the Bacardi rum boxes would be proper. *United States v. Cheatwood,* 575 F.2d 821 (10th Cir.1978); *United States v. Ortiz,* 63 F.3d 952 (10th Cir.1995); *United States v. Dunn,* 480 U.S. 294, 305, 107 S.Ct. 1134, 1141–42, 94 L.Ed.2d 326 (1987); *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *United States v. Lee,* 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927). If the officer did enter the vehicle and shined his light and looked around before the arrest, it is immaterial, even if improper, because nothing was seized and the same evidence was subsequently found incident to a lawful arrest and from a later lawful impound. Therefore, the inevitable discovery rule would allow the evidence to be used. *United States v. Haro–Salcedo,* 107 F.3d 769, 773 (10th Cir.1997) (seized cocaine admissible although illegally seized as the evidence would have been inevitably discovered during vehicle impound). See also *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984); *United States v. Eylicio–Montoya,* 70 F.3d 1158 (10th Cir.1995); *United States v. Shareef,* supra p. 1500; *United States v. Allen,* 986 F.2d 1354 (1993) (inevitable discovery applied in search incident to arrest, regardless of the sequence of events); *United States v. Horn,* 970 F.2d 728, 732 (10th Cir.1992).

■ When Officer Barney placed defendant under arrest he could conduct a lawful search of the vehicle compartment incident to arrest. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (search incident to arrest of person recently in a vehicle extends to the vehicle compartment and all containers open or closed found there). The defendant's arrest for driving on a suspended license was lawful based on the computer report about his license, and a search of his vehicle proper incident to arrest. *Arizona v. Evans,* 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995); *United States v. Patterson,* 65 F.3d 68 (7th Cir.1995) (arrest following driving with a suspended license justified dog drug detection search); *United States v. Hudgins,* 52 F.3d 115 (6th Cir.1995) (search of defendant's vehicle while he was outside was a lawful search incident to arrest for driving on a suspended license); *United States v. Green,* 776 F.Supp. 565 (D.D.C. 1991) aff'd. 1 F.3d 45 (D.C.Cir.1993) (search of vehicle was lawful incident to arrest of driver for failure to possess a valid license, arrest was after the search); *Givens v. State,* 949 S.W.2d 449, 1997 WL 366035 (Tex.App. 1997) (officer could arrest defendant based on a computer check indicating defendant's license had been suspended and search of the vehicle was lawful). See also *James v. United States,* 709 F.Supp. 257, 259 (D.D.C.1989) (probable cause justified motorist's arrest based on computer report that driver's license was suspended). In *United States v. Neu,* 879 F.2d 805, 807 (10th Cir.1989) the court said an arrest of defendant was justified following a lawful stop where it was determined the driver did not have a valid license.

In *United States v. Lacey,* 86 F.3d 956 (10th Cir.1996) the court addressed the search of a vehicle incident to arrest. The defendant was arrested outside his van and it was searched incident to arrest. The court said:

"In *Belton,* the Supreme Court held that a police officer may conduct a contemporaneous warrantless search of the passenger compartment of a vehicle incident to a lawful arrest. 453 U.S. at 460, 101 S.Ct. at 2864. In creating this bright line rule for automobiles, the Court reasoned that "articles inside

vehicle when there is no licensed drivers to at-

tend to it").

the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].'" Id. (quoting *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)) (alteration in original). Lacey contends that because he had been handcuffed and placed on the ground at the time of the search, and because the door to his van was closed, there was no threat that he would reach inside the vehicle for a weapon or to destroy evidence. Thus, Lacey argues, the rationale for a search incident to arrest did not exist, and the resulting warrantless search of the van was unreasonable.

We have previously held that where an officer has made a lawful arrest of a suspect in an automobile, the officer may seize items of evidence found within the passenger compartment of the vehicle as part of a search incident to a lawful arrest, even when the suspect is outside of the vehicle and handcuffed. *United States v. McKinnell,* 888 F.2d 669, 672–73 (10th Cir.1989); *United States v. Cotton,* 751 F.2d 1146, 1148 (10th Cir.1985). Thus, we must reject Lacey's argument that the district court erred in failing to suppress the fruits of the vehicle search. Because the agents in this case effectuated a lawful arrest of Lacey, no warrant was required under our case law to contemporaneously search the passenger compartment of his van."

86 F.3d at 971.

See also *United States v. Ortiz,* supra p. 954; *United States v. Franco,* 981 F.2d 470, 472 (10th Cir.1992) (defendant was in a government vehicle and the search was of his nearby vehicle); *United States v. Wright,* 932 F.2d 868 (10th Cir.1991); *United States v. Henning,* 906 F.2d 1392, 1396 (10th Cir.1990) ("whereas here the vehicle contains no trunk, the entire inside of the vehicle constitutes the passenger compartment and can be lawfully searched"); *United States v. McKinnell,* 888 F.2d 669 (10th Cir.1989) (search of vehicle incident to arrest includes compartment and containers, opening the bag and search is valid even if defendant is "arrested, handcuffed, and placed outside of vehicle" p. 673);

*United States v. Cotton,* 751 F.2d 1146, 1149 (10th Cir.1985) (same).

■ Thus, the search incident to arrest in this case was valid and the PCP bottle lawfully found. Thereafter the vehicle was impounded based on the license violation and the contraband. According to Officer Barney, a station house impound search was conducted pursuant to the Sevier County Sheriff's office policy (Def. Exh. F). The impound was lawful under paragraph 1.e (Authority, impound policy). The vehicle was inventoried pursuant to the policy and the 36 bottles of PCP found. See defendant's Exhibit G. It is proper to inventory a vehicle to protect the owner's property or to protect it from loss or misuse. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *United States v. Kornegay,* 885 F.2d 713, 717 (10th Cir.1989) (an inventory search is reasonable because police are obliged to secure a vehicle's contents). The inventory must be conducted pursuant to standardized criteria. *Florida v. Wells,* 495 U.S. 1,4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990). However, the court in *Wells* did not require any particular set of procedures. It did recognize a policy of opening all closed containers would be proper. Id. The Sevier County Sheriff's impound policy, Procedure, pg. 12, provided:

(1) "When a vehicle is taken to any police parking lot, impound lot or to any commercial storage lot, a written inventory shall be made of the contents of the vehicle, the trunk and including any closed package, container or compartment. Such record shall become a part of the case file. When custody of the vehicle changes from one person to another, the person taking custody of the vehicle may also assume custody of the contents by placing his signature on the inventory list."

■ The procedure was followed in this case. This type of routine inventory is proper police practice. *United States v. Martin,* 566 F.2d 1143 (10th Cir.1977); *United States v. Matthews,* 615 F.2d 1279 (10th Cir.1980); *United States v. Leonard,* 630 F.2d 789 (10th Cir.1980); *United States v. Long,* 705 F.2d

1259 (10th Cir.1983); *United States v. Maher*, 919 F.2d 1482 (10th Cir.1990); *United States v. Leopard*, 936 F.2d 1138 (10th Cir. 1991); LaFave, *Search and Seizure*, 3d Ed. § 7.4(a) (1996). In a similar situation to this case, the impound search was found proper in *United States v. Haro–Salcedo*, supra, even though a prior DEA search was illegal. The impound and inventory was pursuant to standard procedures, as in this case. See also *United States v. Rios*, 88 F.3d 867, 870 (10th Cir.1996); *United States v. Miller*, 84 F.3d 1244, 1251 (10th Cir.1996). Also *United States v. Horn*, supra and *Colorado v. Bertine*, 479 U.S. 367, 371–76, 107 S.Ct. 738, 740–44, 93 L.Ed.2d 739 (1987).

 Further, when Officer Barney made his initial search of the vehicle incident to arrest he found a bottle of PCP, other boxes that had been opened and the seals on bottles broken.[4] This evidence provided probable cause that the vehicle likely contained further contraband. Therefore, it was permissible to search the vehicle at the sheriff's office under the automobile exception to the warrant requirement. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The vehicle could be searched at the scene or taken to police headquarters and searched. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Michigan v. Thomas*, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982); *Florida v. Meyers*, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (may search impounded vehicle based on probable cause); *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) (probable cause justifies search three days after seizure of vehicle). The rule is firmly recognized in the cases in this Circuit. *United States v. Anderson*, supra, 114 F.3d at 1065; *United States v. Parker*, 72 F.3d 1444 (10th Cir.1995); *United States v. Ludwig*, 10 F.3d 1523 (10th Cir. 1993); *United States v. Nielsen*, 9 F.3d 1487, 1489–90 (10th Cir.1993). Therefore, Officer Barney, and others', search of the vehicle at the Sheriff's office was lawful and the contra-

band properly seized. The evidence is admissible in evidence.

### Conclusion

The defendant Frederick Shawn Williams' motion to suppress should be denied.

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

August 28, 1997.

---

4. Although not raised by the Government, even if the defendant had been transporting rum it would have been illegal under Utah law.