1998 ND 41

**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Jarel Aaron OLSON, Defendant and Appellee.**

**Criminal No. 970200.**

Supreme Court of North Dakota.

Feb. 12, 1998.

Alan S. Dohrmann, Assistant State's Attorney, Fargo, for plaintiff and appellant.

Mark A. Beauchene of Wold Johnson, P.C., Fargo, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] The State appealed from an order suppressing evidence found in the trunk and passenger compartment of a car and in a hotel room. We conclude the search of the passenger compartment was a valid search incident to arrest and the search of the trunk was valid under the inevitable discovery doctrine. We also conclude the search warrant for the hotel room was supported by probable cause. We therefore reverse the suppression order.

I

[¶ 2] Between 2:30 and 3:00 a.m. on October 2, 1996, the manager of the Days Inn called 911 to report individuals in an older white Oldsmobile Cutlass were creating a disturbance in the parking lot at the Days Inn. She said she believed the occupants were intoxicated and mentioned the possibility of drugs.

[¶ 3] Shortly before 3:00 a.m., a West Fargo Police Officer received the report from West Fargo Police dispatch while he was having coffee at a gas station with a friend, who was not a police officer. The officer and his friend left the station, and the officer was going to go to the Days Inn. As they were

leaving the station, however, they observed an older Cutlass with a bicycle hanging out of the trunk. The officer got in his car and followed the Cutlass, while the officer's friend went to the Days Inn to verify the information received from dispatch. The officer's friend, after verifying with the manager of the Days Inn the description of the vehicle and verifying it had a bicycle hanging out of the trunk, called the information into dispatch.

[¶ 4] The officer, while following the car, noted it weaved within its own lane of traffic for approximately one and one-half miles. After the officer received confirmation from dispatch that this was the correct vehicle, he stopped the car. The driver, after initially giving the officer a false name, eventually gave his correct name, Jarel Olson. The officer ran a license check, which showed Olson's Minnesota driver's license had been suspended, and arrested Olson for driving under suspension.

[¶ 5] The passenger, after being "checked out" by another officer, was allowed to leave, but needed to remove the bicycle from the trunk, which was tied down with a piece of rope. While the passenger was removing the bicycle, the officer saw a .22 rifle in the trunk. The officer then searched the trunk and found two small suitcases and a brown paper bag, inside of which was a plastic container. Inside one of the suitcases, the officer found .22 shells as well as .357 ammunition. Inside the plastic container, the officer found plastic bags containing a substance he believed to be methamphetamine.

[¶ 6] After searching the trunk, the officer searched the passenger compartment and found syringes, a black box containing a small gram scale, some unidentified pills, a hunting knife and sheath, a black notebook listing names, addresses, phone numbers, and amounts of money "owed," and plastic bags believed to contain methamphetamine. The officer arrested Olson for possession of a controlled substance with intent to deliver and possession of drug paraphernalia. A special agent with the North Dakota Bureau of Criminal Investigation obtained a search warrant and searched Olson's residence, room 214 of the Days Inn. Items seized from

the room included miscellaneous paperwork, foil with residue, razor blades, a black bag, plastic bags, rubber gloves, "snort tubes," a boot knife in a black sheath, an electronic scale, a loaded .357 handgun, and a .22 caliber clip containing five shells.

[¶ 7] Olson was charged with possession of a controlled substance with intent to deliver and possession of drug paraphernalia. Olson filed a motion to suppress the evidence found in the trunk and passenger compartment of the car and in his hotel room. Following a hearing, the trial court upheld the stop and arrest of Olson for driving under suspension, but found no probable cause for the searches of the car or for the search warrant for Olson's hotel room, and suppressed the evidence found.

[¶ 8] The State appeals from the June 4, 1997, order granting defendant's motion to suppress evidence. The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06(1). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. §§ 29–28–02 and 29–28–07(5). The appeal was timely under N.D.R.App.P. 4(b)(2).

## II

[¶ 9] The State contends the searches of the passenger compartment and trunk of the car are valid and the evidence should not have been suppressed.

## A

[¶ 10] "A trial court's findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence." *City of Fargo v. Thompson,* 520 N.W.2d 578, 581 (N.D.1994). "In reviewing the evidence, we recognize it is the trial court's function to consider the testimony and weigh the credibility of the witnesses." *State v. Erbele,* 554 N.W.2d 448, 450 (N.D.1996). "The State has the burden of showing that a warrantless search falls within an exception to the war-

rant requirement." *State v. Avila*, 1997 ND 142, ¶ 16, 566 N.W.2d 410.

**B**

**■** [¶ 11] In *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (footnotes omitted), the United States Supreme Court held:

"when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

"It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment...."

*See also, e.g., State v. Hensel*, 417 N.W.2d 849, 852–53 (N.D.1988) (applying *Belton* to uphold warrantless search of the passenger compartment of a vehicle and all containers within it when defendant was handcuffed and placed in the police car).

[¶ 12] The trial court, however, suppressed the evidence found in the passenger compartment. The transcript of the March 24, 1997, suppression hearing provides the only explanation for why the trial court suppressed the evidence:

"THE COURT: But I don't think he had probable cause to search either one of them [the trunk or the passenger compartment]. This is a bad case. I don't think he had a reasonable and articulable suspicion to do anything but arrest him for DUS, lock up the car and take him to jail pure and simple.

"He searched that passenger compartment after he searched the trunk, and not only did he go beyond the .22 caliber pistol, okay, he went beyond that in the trunk and to continue all he had to do is lock up the car, seize it, get a search warrant. He didn't do it. He didn't do it. You have a bad seizure.

\* \* \* \* \*

"THE COURT: There was enough. There was enough evidence for a stop. That weaving gives you enough to stop for a DUI. Okay. And the DUS check goes with the DUI so the DUS arrest stands. The arrest stands."

**■** [¶ 13] The trial court upheld the validity of the initial stop of the car Olson was driving, based on the weaving and the information called into dispatch by the manager of the Days Inn and forwarded to the officer, and upheld the validity of the driving under suspension arrest, based on the license check conducted by the officer. *See State v. Mische*, 448 N.W.2d 412, 414–15 (N.D.1989) (discussing license check and subsequent arrest for driving under suspension); *United States v. Williams*, 980 F.Supp. 1225, 1231 (D.Utah 1997) (citing cases). The validity of the stop and the arrest have not been challenged on appeal. The valid arrest of Olson, based upon probable cause, gave the officer the right, under *Belton*, to perform a search incident to arrest.[1] *See Belton* at 460, 460 n. 2, 101 S.Ct. at 2864 n. 2 (noting the validity of the arrest had not been challenged); *see also Erbele* at 451 ("The search is valid because at the time of the search, Delzer, with probable cause, had already placed Erbele under arrest for DUI. Once a person is under a lawful arrest, an officer may search the passenger compartment of the arrestee's vehicle without a warrant."). Separate probable cause to search the passenger compartment is not necessary. *See Belton* at 460–61, 101 S.Ct. at 2864. As such, the trial court was incorrect as a matter of law when it ruled probable cause was required for the search. Furthermore, Olson cited no case, and our research found none, which would void the search of the passenger compartment as a search incident to arrest under *Belton* because the trunk was searched first. *Cf. Williams* at 1231. Under the circumstances of this case, the search of the passenger compartment was valid and the evidence should not have been suppressed.

---

1. At oral argument, Olson asked this Court not to apply *Belton* to any and all crimes for which arrest is possible. The United States Supreme Court, however, has stated a *Belton* search is permissible even after an arrest for speeding. *See Michigan v. Long*, 463 U.S. 1032, 1035 n. 1, 103 S.Ct. 3469, 3473 n. 1, 77 L.Ed.2d 1201 (1983). We need not address the limits of *Belton* under our state constitution, because at oral argument Olson's counsel acknowledged he has not raised a state constitutional issue.

C

■ [¶ 14] The holding in *Belton*, allowing a search of the passenger compartment and all containers in the passenger compartment, specifically excluded the trunk. *See Belton* at 460 n. 4, 101 S.Ct. at 2864 n. 4. The State offers several theories to avoid suppression of evidence from the trunk. The State contends the items in the trunk of the car Olson was driving would have been inevitably discovered either following the search, incident to arrest, of the passenger compartment or when the vehicle was inventoried following its impoundment. The State also contends the search of the trunk was valid because the "open trunk exposed a weapon in plain view, readily accessible to the Defendant or his passenger."

[¶ 15] During the suppression hearing, the State argued "if [the officer] would have started up front and searched the passenger compartment he would have inevitably discovered the stuff in the trunk because he would have probable cause to search the trunk." To which the trial court replied, "But I don't think he had probable cause to search either one of them." As held in part II B, this ruling was wrong as a matter of law, because under *Belton* the search of the passenger compartment does not require separate probable cause when there is a valid arrest.

[¶ 16] In *State v. Johnson*, 531 N.W.2d 275, 279 (N.D.1995) (citing *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984)), we noted the United States Supreme Court has held "evidence obtained as a result of unlawful police conduct may be admissible at trial if the prosecution proves by a preponderance of the evidence that the challenged evidence would have been inevitably or ultimately discovered by lawful means in the course of the investigation." At the suppression hearing, the officer testified he searched the passenger compartment "because I had already arrested the individual." The report completed by the officer on October 2, 1996, also stated "[t]he search of this vehicle was done incident to the arrest for the DUS." Thus the record sufficiently indicates the officer, even if he had not seen the evidence in the trunk, would have searched the passenger compartment as a search incident to arrest. *Compare Johnson* at 280.

[¶ 17] If the officer had searched the passenger compartment first, among the items he would have found were syringes, unidentified pills, a black box containing a small gram scale, and plastic bags containing a powdered substance. Because this search and the items found would have given the officer probable cause to search the rest of the vehicle, including the trunk, without a warrant, the trial court erroneously suppressed the evidence found in the trunk. *See Michigan v. Long*, 463 U.S. 1032, 1035 n. 1, 103 S.Ct. 3469, 3473 n. 1, 77 L.Ed.2d 1201 (1983) ("It is clear ... if the officers had arrested Long for speeding or for driving while intoxicated, they could have searched the passenger compartment under *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and the trunk under *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), if they had probable cause to believe that the trunk contained contraband."); *United States v. Myers*, 102 F.3d 227, 230, 232 (6th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1720, 137 L.Ed.2d 843 (1997) (upholding finding of probable cause to search trunk, where large sums of money and guns were found in passenger compartment after search incident to arrest under *Belton*); *White v. Commonwealth*, 24 Va.App. 446, 482 S.E.2d 876, 878–79 (1997) (upholding finding of probable cause to search trunk, where crack cocaine was found in passenger compartment during search incident to arrest for driving under suspension). Because we conclude the items in the trunk would have been inevitably discovered following the search, incident to arrest, of the passenger compartment, we do not decide the validity of the State's alternate theories.

III

■ [¶ 18] The State contends the search warrant was supported by probable cause and the evidence found in the hotel room should not have been suppressed.

## A

[¶ 19] The issue of whether probable cause exists to issue a search warrant is a question of law. *See, e.g., State v. Hage,* 1997 ND 175, ¶ 10, 568 N.W.2d 741.

"Probable cause to search does not require the same standard of proof necessary to establish guilt at trial; rather, probable cause to search exists if it is established that certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place."

*State v. Ringquist,* 433 N.W.2d 207, 212 (N.D.1988). The duty of the magistrate who determines whether to issue the warrant " 'is to make a practical, commonsense decision whether, given all the information considered together, there is a fair probability contraband or evidence of a crime will be found in a particular place.' " *Hage* at ¶ 10 (quoting *State v. Rydberg,* 519 N.W.2d 306, 308 (N.D. 1994)). On appeal, this Court reviews "the search warrant's validity in the same manner using the 'totality-of-the-circumstances' approach, independent of the trial court's determination." *Hage* at ¶ 11. "We give deference to the magistrate's factual findings in determining probable cause, and will not disturb a magistrate's conclusion on appeal if there is a substantial basis for the conclusion that probable cause exists." *Hage* at ¶ 11 (citation omitted).

## B

[¶ 20] Exhibit B, which was attached to the application for the search warrant, was an affidavit by a special agent with the North Dakota Bureau of Criminal Investigation to support the application for the search warrant. The affidavit stated the agent had been contacted by the officer who had arrested Olson and had searched the car Olson had been driving. The affidavit stated the officer informed the agent about the call from a "concerned citizen" stating two possibly intoxicated individuals were revving their car engine in the Days Inn parking lot. The affidavit stated the officer had told the agent about finding numerous items in the car Olson had been driving, including plastic bags containing a substance which testing showed to be methamphetamine, a gram scale, a .22 rifle, and ammunition for a .357 handgun. The affidavit stated the agent checked Olson's criminal history and found it was illegal for Olson to be in possession of any firearms, because Olson had been convicted of a felony within the past ten years. The affidavit stated the agent had been informed by another agent that Andrea Warnke had purchased gram quantities of methamphetamine from Olson at his residence in South Fargo. The affidavit stated Olson had told the agent he had recently been thrown out of the South Fargo residence by his girlfriend and was currently living in the Days Inn in West Fargo, and the officer confirmed with the management of the Days Inn Olson was staying in room 214. The affidavit stated, based on the agent's experience, "persons in possession of equivalent quantities of methamphetamine (estimated by your Affiant to be more than three quarters of an ounce) as that possessed by Olson, are indicative of persons involved in the sale and distribution of methamphetamine. Your Affiant also is aware that drug dealers also utilize scales in the distribution of drugs." The affidavit stated, based upon this information, the agent believed "Jared [sic] Olson is involved in a continuing enterprise involving the sale of the controlled substance methamphetamine." The affidavit stated drug dealers often work out of hotel rooms and keep drugs, drug paraphernalia, and proceeds and records of drug transactions in their residences.

[¶ 21] As with the portion of the order suppressing the evidence found in the passenger compartment and the trunk of the car, the trial court's order fails to explain why the evidence obtained from the search of Olson's hotel room was suppressed. The transcript indicates the trial court was concerned about who Warnke was and about her reliability. Additionally, the trial court was not sure all the information provided by the manager of the Days Inn to dispatch, specifically the manager's suspicions about illegal activity taking place inside the hotel, had been conveyed to the officer.[2]

2. At the suppression hearing, the manager of the    Days Inn testified she told dispatch "there was

[¶ 22] At the time of the search warrant application for Olson's hotel room, probable cause existed for Olson's arrest based upon the items found in the car. "Probable cause to believe that [Olson] had committed a crime does not, however, establish probable cause to search his house for evidence of that crime." *State v. Metzner*, 338 N.W.2d 799, 804 (N.D.1983). What is necessary is "the evidence before the magistrate must show a nexus between the home to be searched and the contraband sought." *Hage* at ¶ 20. Exhibit B does not contain any direct evidence Olson had been conducting drug activities from his hotel room. We have previously explained, however, " 'circumstantial evidence alone may establish probable cause' to support a search warrant" and "the location of the contraband may be inferred by connecting circumstances." *Hage* at ¶ 20 (citation omitted).

[¶ 23] As was recognized by the trial court, the reliability and credibility of the information provided by Andrea Warnke was unsupported. *Compare State v. Mische*, 448 N.W.2d 415, 417–18 (N.D.1989). The agent did not provide the magistrate any information to clarify who Warnke was or whether she had previously provided reliable information. *See State v. Erickson*, 496 N.W.2d 555, 558 (N.D.1993). The information available for a probable cause determination, however, is read together, not separately, and other bases for finding probable cause must be examined. *See, e.g., Hage* at ¶ 11.

[¶ 24] "We have often instructed that the courts must take into account inferences and deductions that a trained and experienced officer makes." *Mische* at 419 (citing cases). Here, the agent made several observations based upon his experience, taking into consideration the facts known to him. In addition to the agent's experience, the fact that at the time of his initial arrest Olson had just come from the Days Inn parking lot, along with the evidence, such as the scale, found in the car he was driving, lends credibility to the inference Olson was dealing drugs and may have had drugs and additional drug paraphernalia in his room at the Days Inn. *See Metzner* at 804–05 (citing cases discussing lack of direct evidence creating link); *see also* 2 Wayne R. LaFave, *Search and Seizure* § 3.7(d), at 375–79 (3d ed.1996).

[¶ 25] We have previously relied upon such inferences in our cases involving dumpsters and garbage bags and cans. For example, in *State v. Erickson*, 496 N.W.2d 555, 559 (N.D. 1993), this Court held there was probable cause to search Erickson's residence, based upon evidence found in a dumpster located behind his residence and a letter and traffic citation found in the dumpster with his name on it. In *Erickson* this Court held unsupported allegations Erickson was a drug dealer and carried a weapon were insufficient to establish probable cause. *Erickson* at 558. This Court's decision was based upon "whether the incriminating items discovered in the dumpster can reasonably be connected to Erickson." *Erickson* at 559. This Court held they could be:

> "The citation and envelope found in the dumpster had Erickson's name on them. The location of the dumpster, behind Erickson's place of residence, fortified the implication that the dumpster was used by Erickson and that the trash was Erickson's. This evidence supplies a nexus between Erickson and the contraband as well as between the home to be searched and the evidence to be sought."

*Erickson* at 559. Similarly, in *State v. Johnson*, 531 N.W.2d 275, 279 (N.D.1995), we held "the presence of the marijuana seeds in the garbage bag [outside of Johnson's residence], which also contained deposit slips bearing Johnson's name, would warrant a person of reasonable caution to believe there was probably more marijuana inside Johnson's home."

strange activities and we suspected drug activity because of the frequent guests to the room for short periods of time and that there was the individual who was registered to the room denied housekeeping service every day that he was there." The manager also testified housekeeping saw "a black bag that the man took from the room every time he left." This information was not set out in the search warrant affidavit and is not available for the probable cause determination even if it was known to the officer or the agent. *See State v. Handtmann*, 437 N.W.2d 830, 838 (N.D.1989) (stating a search warrant "cannot be validated by information known when the warrant was sought but not disclosed to the issuing magistrate").

*See also State v. Herrick,* 1997 ND 155, ¶¶ 12–15, 567 N.W.2d 336 (finding probable cause for search warrant of residence based upon marijuana seeds and stems found in garbage even though Herrick argued "it is possible someone else could have dropped the seeds and stems into his garbage . . . [and] it would be mere speculation on the officer's part to believe any drugs or drug paraphernalia would be found in Herrick's home").

[¶ 26] The evidence found in the car Olson was driving is similar to the evidence found in the garbage in cases such as *Erickson, Johnson,* and *Herrick.* Olson's path from the Days Inn and his acknowledgment he resided there, and why, supply a nexus to the Days Inn, and similar to *Erickson, Johnson,* and *Herrick,* the evidence found in the car Olson was driving "would warrant a person of reasonable caution to believe there was probably more" drugs and drug paraphernalia in Olson's residence—room 214 of the Days Inn. *E.g., Johnson* at 279.

▆▆ [¶ 27] There is also an additional basis for finding "a nexus between the home to be searched and the contraband sought." *Hage* at ¶ 20. In this case, in addition to drugs and drug paraphernalia, Exhibit A of the search warrant application listed a .357 handgun among the items to be sought in the search. This request was based upon the .357 ammunition found in the car Olson was driving and the criminal history check showing Olson was not allowed to possess firearms. These facts are similar to those in *Metzner,* where a warrant to search a mobile home for a recently purchased rifle was found valid even though there was no evidence the gun, after purchase, had ever been taken out of the car the purchaser had left the store in. *See Metzner* at 804–05. This Court in *Metzner* concluded the fact the gun could be elsewhere did not change the fact the magistrate could reasonably have concluded the weapon was probably in Metzner's mobile home:

"A magistrate considering the affidavit at issue here could logically conclude that a person would keep a rifle in his house. This would be particularly true of a convicted felon who would logically be concerned that his possession of the weapon remain secret. If, as the district court appears to suggest, there is some significance to be drawn from its determination that the rifle might just as logically have remained in the car, it is sufficient to say that the magistrate might well have concluded that a convicted felon would more logically secret a rifle in his home, than in his car which carries a considerably diminished expectation of privacy and is more readily open to legitimate search by the authorities with a wider variety of justifications."

*Metzner* at 805; *see State v. Frohlich,* 506 N.W.2d 729, 733–34 (N.D.1993) (discussing *Metzner*). This case is similar to *Metzner;* however, the nexus in this case is stronger. *See Mische* at 422 ("[S]omething additional and more objective than the facile conclusion that contraband is ordinarily kept in the home should be required to establish probable cause to search that home. . . ."). The magistrate, knowing Olson's criminal history, his path from and connection to the Days Inn, and the fact .357 ammunition, but not a .357 handgun, was found in the car Olson was driving, could reasonably have concluded a .357 handgun was probably in Olson's hotel room.

▆▆ [¶ 28] Probable cause, as the name implies, requires probability, not certainty. *See, e.g., Metzner* at 804. The use of a search warrant is favored, *see, e.g., Johnson* at 279, and because there is no bright line test by which to judge the sufficiency of an affidavit "we choose to resolve . . . doubt in favor of sustaining the search, and the judgment of the magistrate." *Metzner* at 805; *see also Erickson* at 559. Under the facts of this case as stated in the affidavit, the totality of the circumstances establishes probable cause for the issuance of the search warrant.

## IV

[¶ 29] The order of the trial court suppressing evidence is reversed.

[¶ 30] VANDE WALLE, C.J., and MARING and MESCHKE, JJ., concur.

NEUMANN, Justice, concurring and dissenting.

[¶ 31] I concur in the first parts of the majority's opinion reversing suppression of the evidence discovered in the searches of the passenger compartment and the trunk of Olson's automobile. I dissent, however, from part III.B., holding the agent's affidavit demonstrated a sufficient nexus with Olson's motel room to support issuing a warrant for its search. I do not think a nexus was shown. In my opinion, this case is more of a *Mische* than a *Metzner*. I would affirm suppression of the evidence seized in the search of the motel room.

[¶ 32] William A. Neumann